### ALEXANDER v. BERNARD.

DEEDS—ESCROW—FORFEITURE—DELIVERY.

Where deeds were placed in escrow, together with purchasemoney mortgages and notes, to be delivered to the purchaser and seller, respectively, upon the payment of a stated sum at a certain time, and the payment was duly made, a demand by the purchaser that the mortgages and notes should not be delivered until the title should be cleared from incumbrances did not prevent her from afterwards insisting upon a delivery of the deeds according to the terms of the escrow.

Appeal from Gratiot; Stone, J. Submitted January 15, 1904. (Docket No. 48.) Decided June 7, 1904.

Bill by Emma J. Alexander against Fred H. Bernard, Elsie Vandercook, and others, to compel the delivery of certain deeds. From a decree for complainant, the above-named defendants appeal. Affirmed.

*John T. Mathews*, for complainant.

*Searl & Monfort* and *C. W. Giddings*, for appellants.

MOORE, C. J.    This is an appeal by Fred H. Bernard and Elsie Vandercook from a decree in favor of complainant, compelling the delivery of two deeds held in escrow by defendant Fred H. Bernard.    The bill of complaint was filed January 24, 1903.

On the 4th day of May, 1901, Elsie Vandercook, defendant, claimed to be the owner of two certain pieces of real estate in the city of St. Louis.    George Freeland, his wife, Della A. Freeland, and their son, Perl E. Freeland, entered into an agreement with her to purchase one of said pieces of land at the price of $650, to be paid $50 down, $25 on the 15th of September, 1901, and $25 every three months thereafter until the balance of said purchase price should be paid.    Perl E. Freeland at the same time entered into a like agreement with Elsie Vandercook to purchase the other of her said places; deeds to be made to the grantees upon payment of the $50 down upon each place, and purchase-money mortgages given back to secure the balance of the purchase money.    Elsie Vandercook had no desire to sell one piece unless both were sold.

The papers were executed, and delivered in escrow to defendant Fred H. Bernard, who was cashier of the Commercial Savings Bank, to be held by him, awaiting the performance of certain conditions contained in the contract of escrow, which was in writing.    The grantees in each deed paid respectively the sum of $50 down, and thereafter the quarterly installments as they fell due, until it became apparent that the Freelands would not be able to keep up their payments, when, on December 12, 1901, they made to the complainant quitclaim deeds of their rights, together with an assignment of all rights under and by virtue of the contracts between the said grantees and the said Elsie Vandercook.    The complainant kept up the quarterly payments as they fell due, and

on or before the 15th day of March, 1902, had paid in addition to said quarterly payments the sum of $100, so that on the 13th day of March, 1902, there had actually been paid the sum of $400,—$200 on each place.

The escrow is, in a sense, ambiguous in its description of the papers that were covered and affected by it, as it refers to the fact that "a warranty deed" of lots 5 and 6 had been executed. Both parties agree that two warranty deeds were executed. It also refers to "a mortgage," when in fact there were two mortgages. It then proceeds to state how long said deeds and mortgages are to remain with said Fred H. Bernard,—"until the sum of $300 shall have been paid, which amount said Freelands agree to pay on or before March 15, 1902." It provides that the said Freelands shall pay all taxes, and keep the buildings insured in a sufficient amount to cover said mortgages, payable to the said Elsie Vandercook in case of loss. It has this provision:

" It is further mutually agreed that in case that the said Freelands shall fail to pay said $300 at the time aforesaid, to wit, March 15, 1902, the said Fred H. Bernard shall return to said Elsie Vandercook the said deeds aforesaid, and to the said Freelands the said mortgages aforesaid."

It is the claim of the complainant that all the conditions necessary to be performed to entitle her to the delivery of the deeds have been performed, and the circuit judge so decreed. It is the claim of defendant Vandercook that, because the holder of the escrow was notified not to deliver the notes and mortgages in his hands to the defendant Vandercook, complainant is not now entitled to have the deeds delivered to her. The record, we think, fairly discloses that, before the making of the final payment to Mr. Bernard, complainant's attorney was of the opinion that the title of defendant Vandercook was not a free and unincumbered one, and sought to prevent the delivery of the notes and mortgages until a bill in chancery could be filed to compel defendant Vandercook to make good the covenants of warranty in the deeds; and for that reason the

notice was given and correspondence had. In his letter of March 27th, the attorney for complainant wrote to defendant Mr. Bernard, among other things:

"Now, so far as the said deeds are concerned, Mrs. Alexander is ready to accept and allow mortgages to be delivered to Mrs. Vandercook as soon as incumbrances and clouds by tax titles are removed from said lots. Mrs. Alexander stands in the shoes of the Freelands, and expects to be bound by everything binding on said Freelands, and expects to perform their several agreements in the premises. Mrs. Alexander, on behalf of the said Freelands, does not consent to a withdrawal of said deeds from escrow, but, if Mrs. Vandercook demands them, instead of taking measures to have said incumbrances and tax-title liens and clouds removed, and perfect the title, which said deeds declare to be free from all incumbrances whatever, and are warranted same, you can exercise your own judgment as to the delivery of them back to Mrs. Vandercook. But a recall of said deeds will be at her peril, and be treated by the said Freelands and their grantees and assigns as an intention not to perform the contract in the premises of her, and you are notified not to surrender the contract between said parties and placed in escrow with other papers."

On March 28th defendant Vandercook caused a notice to be served upon the complainant and the Freelands reciting the fact that they refused to accept the deeds and deliver the mortgages and notes, and declaring the contract forfeited. Among other things, the notice contained the following:

"And you are hereby further notified that I have instructed the said Fred H. Bernard to return to you $237.17, paid in by you, or some of you, to the said Bernard, as provided by the terms of said written agreement, upon each and all of you signing the receipt therefor now in his hands."

On the 21st of January, 1903, a notice signed by the complainant and all the Freelands was served on defendant Bernard, among other things containing the following:

"You are hereby notified that all notices heretofore served upon you by myself, or in my behalf, and George Freeland, Della A. Freeland, and Perl E. Freeland, in reference to the withholding of deeds and mortgages conveying or incumbering the title to lots 5 and 6 of block 40 of the city of St. Louis, are hereby canceled, withdrawn, and declared void by ourselves, and each of us. And we, and each of us, hereby make this as our written demand upon you to deliver to Emma J. Alexander the two certain warranty deeds made and executed; * * * she, the said Emma J. Alexander, having purchased from the said grantees mentioned in said deeds the interest of said grantees, and being now the owner of all the rights, titles, and interests of said grantees in and to the premises conveyed by said warranty deeds."

The testimony of defendant Vandercook shows that she never demanded from Mr. Bernard the notes and mortgages, but that she did demand from him the deeds. The record does not show there has ever been a refusal to deliver to her the notes and mortgages. Under these circumstances, is the complainant entitled to a delivery of the deeds? The complainant answers the question affirmatively. The defendant Vandercook replies in the negative. The counsel on each side have prepared very careful briefs, discussing a great many legal questions. We do not deem it necessary to discuss them. Warranty deeds, notes, and mortgages were made and left with Mr. Bernard. According to the written agreement, he was to retain the deeds until the grantees had paid $300, which was to be paid on or before March 15, 1902. More than this amount was paid before that time. The only provision for a return of the deeds to Elsie Vandercook, and of the mortgages to the Freelands, is the following:

"It is further mutually agreed that in case that the said Freelands shall fail to pay said $300 at the time aforesaid, to wit, March 15, 1902, the said Fred H. Bernard shall return to said Elsie Vandercook the said deeds aforesaid, and to the said Freelands the said mortgages aforesaid."

That contingency never occurred. The complainant

never desired the notes and mortgages back, nor did she desire to rescind the contract. She made all the payments as required. It is true that, under the advice of counsel, she did for a time insist the notes and mortgages should not be delivered until the title was perfected. She never refused to take a perfect title, and, after getting other counsel, she changed her mind about taking the deeds that were left with Mr. Bernard, and offered to take them. There is nothing shown by the record to prevent her from asserting the right to a delivery of the deeds.

The decree is affirmed, with costs.

The other Justices concurred.