## SIMPSON v. GREEN. (No. 223-3369.)

(Commission of Appeals of Texas, Section A. June 1, 1921.)

1. Frauds, statute of ⊜125(1)—Statute does not declare parol sale of land void, but merely provides means of resistance.

The statute does not declare a parol contract for the sale of land to be illegal and void, but merely provides a means of successful resistance in case the statute is not complied with.

2. Frauds, statute of ⊜108(4)—Consideration need not be expressed in writing.

It is not necessary that the consideration of a contract for sale of lands should be expressed in the writing.

3. Frauds, statute of ⊜103(1)—Deed deposited in escrow held not insufficient as memorandum.

A deed deposited in escrow is not insufficient as a memorandum because in the form of an executed contract.

4. Frauds, statute of ⊜108(4)—Recital of consideration of deed in escrow held sufficient to meet requirements of statute.

In trespass to try title where the statute of frauds was interposed as a defense and it appeared that the vendor had executed an ordinary warranty deed and deposited it in escrow to be delivered on acceptance of title and payment of purchase money, the recital of the deed as a money consideration in a specified amount *held* sufficient to meet the requirements of the statute, though an auto was taken in part payment prior to its execution, and the balance in cash deposited where the deed was executed and deposited.

5. Frauds, statute of ⊜127—Decree enforces prior oral contract reduced to writing and not memorandum.

When a sufficient memorandum of a prior oral contract has been made and signed and suit for enforcement is brought, it is the oral contract that is enforced, and not the memorandum by which such contract is proved.

6. Escrows ⊜1—Valid contract of sale necessary to make deposit of deed a genuine "escrow."

A valid contract of sale is necessary to render the deposit of a deed in pursuance of the same a genuine "escrow" (citing Words and Phrases, Escrow).

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Escrows ⬅═8(2)—Deposit of deed sufficient to meet statute of frauds held an irrevocable escrow.**

Where there is a prior verbal contract of sale, and the recitals in the deed placed in escrow, in themselves or in connection with other writings submitted therewith, meet the requirements of the statute of frauds, the deed so deposited is a genuine escrow, and therefor irrevocable, and the prior verbal contract is thereby rendered enforceable.

**8. Specific performance ⬅═16—All circumstances must be taken into consideration in determining whether remedy inequitable.**

All circumstances in evidence must be taken into consideration in determining whether specific performance in a given case would be inequitable.

**9. Specific performance ⬅═121(3)—Evidence insufficient to show that enforcement for contract of sale would be inequitable.**

In a suit for trespass to try title and for specific performance of a contract for the sale of land at the price of $4,500, the land being alleged to be worth $6,000 and defendant's rental interest in the crops worth $1,500, and there being an incumbrance for unpaid purchase money, evidence *held* insufficient to show that a decree for specific performance would be inequitable.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by William Simpson against Jesse Green. Judgment for defendant was affirmed by the Court of Civil Appeals (212 S. W. 263), and plaintiff brings error. Reversed and remanded as recommended by the Commission of Appeals.

McMurray & Gettys, of Decatur, for plaintiff in error.

R. E. Carswell, of Decatur, and Sullivan, Hill & Minor, of Denton, for defendant in error.

GALLAGHER, J. Wm. Simpson, plaintiff in error, sued Jesse Green, defendant in error, in trespass to try title to recover 175 acres of land. He alleged Green sold him the land sued for, for $4,500, of which sum $50 in cash, together with an automobile accepted at a valuation of $300, were paid at the time; the balance to be paid in cash when Green furnished Simpson an abstract showing good title in Green to the land.

Simpson further alleged that Green, in pursuance of said agreement, executed a deed purporting to convey said land to him for a cash consideration of $4,500 and placed the same in escrow in the hands of one Frank Turner to be held until Simpson should approve the title and pay the remainder of the purchase money. He further alleged that he thereafter waived the furnishing of the abstract, accepted the title to said land, and offered to pay the balance of the purchase price, but that Turner refused to deliver the deed on the ground that Green was unwilling for him to do so. Simpson prayed for judgment for title to the land and for possession of the deed held by Turner.

Green, besides pleading general denial, pleaded that the contract of the sale of said land by him was oral and unenforceable, because in violation of the statute of frauds.

He also pleaded that he was young and inexperienced and ignorant of the real value of the property in question, and that Simpson was a shrewd business man, and trader of long experience and familiar with the value of such property, and thereby had decided advantage in the negotiations.

He further alleged that the land was worth $6,000, and that his rental interest in the crops thereon was worth $1,500.

He further alleged before he executed the deed to the land he offered to rescind the trade and return the $50 received by him, but that Simpson refused, and that after the deed was executed and delivered to Turner he again sought to rescind the trade, and offered to return both the $50 and the automobile received by him, and that such offer was again refused by Simpson.

He further alleged that when the deed was executed and delivered to Turner, Simpson represented to him that he could not withdraw from his prior verbal contract, but was legally bound to consummate the same, and that Simpson knew that such representations were false and fraudulent, and that he, said Green, was ignorant of the law and believed the same, and that thereby Simpson acquired his land for a consideration wholly inadequate and unconscionable.

Frank Turner was also made a party defendant and answered by disclaiming any interest in the litigation, asserted that he held the deed as stakeholder willing to deliver it to the party entitled thereto, and tendered the deed in court and asked to be discharged with his costs.

The trial was before the court, and the trial judge found that a verbal contract of sale was made substantially as alleged, and that $50 cash was paid on the purchase price at the time; that Green became dissatisfied and offered to return the $50 and rescind the trade, but Simpson insisted that the trade was binding and enforceable and that he was going to have the land; that Green was ignorant of the law and believed the representations so made, and because of such belief executed a general warranty deed conveying the land to Simpson for a recited consideration of $4,500 in hand paid, and that said deed was placed in the hands of Frank Turner until Green furnished abstract of title and Simpson paid the balance of the purchase money; that at the same time Simpson delivered the automobile to Green

and deposited with Turner, or in his bank, $2,000 to be paid to Green on delivery of the deed and agreed to pay the balance of the purchase money when abstract was furnished and deed delivered to him; that shortly thereafter Green again sought to be released from the trade and tendered to Simpson $50 in cash and offered to return the automobile and, upon Simpson's refusal to accept the same, deposited $50 in Turner's bank to Simpson's credit and left the automobile at his house; that shortly thereafter Simpson waived the furnishing of an abstract, tendered Turner the balance of the purchase money, and demanded delivery of the deed, which demand was refused.

The trial court rendered judgment for the defendant in error, and the Court of Civil Appeals affirmed the judgment. 212 S. W. 263. A writ of error was granted by the Supreme Court.

The Court of Civil Appeals held that the parol contract of sale and no other was the one sought to be enforced, and that the deed did not constitute such memorandum thereof as to make it enforceable under the statute of frauds.

This holding is the basis of plaintiff in error's first assignment.

The statute of frauds of this state, so far as applicable, is as follows:

"No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith. * * * (4) Upon any contract for the sale of real estate. * * *" Rev. St. 1911, art. 3965.

[1] The contract under consideration is not declared by the statute of frauds to be illegal and void. The statute merely provides a means of successful resistance in case it is not complied with. It is not compliance with the statute which constitutes the contract. The statute presupposes its legality, the enforcement of which is only suspended by the statute until its provisions are satisfied. Robb v. San Antonio St. Ry. Co., 82 Tex. 392, 395, 396, 18 S. W. 707; Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893, 896 (writ refused); Edwards v. Old Settlers' Association, 166 S. W. 423, 427 (writ refused); Crutchfield v. Donathon, 49 Tex. 691, 696, 30 Am. Rep. 112.

[2] The rule is settled in this state that it is not necessary that the consideration of the contract of sale of lands should be expressed in the writing. Thomas v. Hammond, 47 Tex. 42, 55; Fulton v. Robinson, 55 Tex. 401, 404, 405; Ellett v. Britton, 10 Tex. 208, 210; Adkins v. Watson, 12 Tex. 199, 201.

The sufficiency of the memorandum of a prior verbal contract was discussed in Morrison v. Dailey, 6 S. W. 426, 427, in which case the Supreme Court announced the rule in this state to be as follows:

"Upon the question presented by the proposition in the demurrer, that the terms of the contract are not sufficiently shown in the memorandum, the decisions are in conflict. The weight of authority seems to be in favor of the rule that all the material terms of the contract should appear in the writing. Riley v. Farnsworth, 116 Mass. 225; Grace v. Denison, 114 Mass. 16; Drake v. Seaman, 97 N. Y. 230; Gault v. Stormont, 51 Mich. 636, 17 N. W. 214; Minturn v. Baylis, 33 Cal. 129; Soles v. Hickman, 20 Pa. St. 180. But the contrary rule is not without authority to support it. Ellis v. Bray, 79 Mo. 227; O'Neil v. Crain, 67 Mo. 251; Holman v. Bank, 12 Ala. 369; Johnson v. Ronald's Adm'r, 4 Munf. 77; 1 Reed, St. Frauds, par. 419. The courts which held the affirmative of the question seem to base their conclusion upon the ground that, by the use of the word 'agreement' or the word 'contract,' the statute meant all stipulations agreed to by the parties. On the other hand, it is considered by some of the authorities that the object of the statute so far as lands are concerned, was to abrogate parol titles, and that this was sufficiently accomplished by a memorandum of the promise to convey the land, to be signed by the vendor, without requiring the other terms of the agreement to be stated. We need not decide which is the better reason, for we regard is as now settled, in this state, that all the terms of the contract need not appear in the memorandum. In Fulton v. Robinson, 55 Tex. 401, a receipt which named the vendee, and recited that it was 'part of the purchase money of my own headright, lying on Rush Creek, in the Cross timbers,' and which was signed by the vendor, was sufficient under the statute of frauds. The memorandum before us is quite similar to that, but is more explicit. It states the price, and that it was to be paid partly in cash and partly on a credit, and shows the rate of interest. If that memorandum was sufficient, this must be. The decision in the case cited lays down a rule of property; and, though we may consider it against the weight of authority, and the better reason, we are not at liberty to depart from it. It is not without both reason and authority to support it."

The deed executed by defendant in error and placed in the hands of Turner to be delivered to plaintiff in error upon payment of the purchase money was an ordinary general warranty deed from Green to Simpson reciting a consideration of $4,500 in hand paid, and conveying the land in question by appropriate description.

[3, 4] Defendant in error contends that this deed was insufficient as a memorandum under the statute because it was in the form of an executed contract, and recited a consideration of $4,500 in hand paid, when in fact an auto was taken as part payment, and all the consideration had not then been paid. The auto was taken at or prior to the execution of the deed at an agreed cash value, and $2,000 in cash was deposited with Turner, or in his bank, at the time the deed was

executed and deposited, and the deed was to be delivered on payment of the remainder of the purchase money. We therefore hold that these objections are untenable, and that the recitals in the deed were in themselves sufficient to meet the requirements of our statute of frauds. McCown v. Wheeler, 20 Tex. 372; Johnson v. Elmen, 94 Tex. 168, 173, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845; House v. Holland et al., 42 Tex. Civ. App. 502, 94 S. W. 153.

In McCown v. Wheeler, supra, a deed had been delivered which was in proper form, except that the name of the grantee was blank. In discussing the value and effect of this deed, the court said:

"Whether the deed, upon the filling of the blank with the name of the grantee, would have been valid as a deed or not, it was of value to the plaintiff. For if so filled up and afterwards acknowledged by the grantor, it would have been good. And in a suit for specific performance by the plaintiff against his grantor, it would be admissible evidence of the contract of sale, though not operative as a deed."

The remaining question to be considered is whether the delivery of the deed to Turner under the facts and circumstances in evidence was a sufficient delivery to make it available in avoidance of the statute of frauds.

The contract of deposit was the joint act of the parties. Defendant in error executed and deposited the deed to be delivered when plaintiff in error accepted the title and paid the balance of the purchase money. Plaintiff in error at the same time deposited a check for $2,000, which check was cashed, the proceeds of which were held in Turner's bank to be paid to defendant in error when his title was accepted. It is true this contract of deposit rested ·in parol, but that it may so rest is conceded by defendant in error. The fact that it was participated in by both parties met the requirement of mutuality and took it out of the class of cases where the deposit and instructions accompanying the same are the ex parte acts of the depositor. Cooper v. Marek, 166 S. W. 58, 60; 21 C. J. p. 870, § 12; Davis v. Clark, 58 Kan. 100, 48 Pac. 563.

The Court of Civil Appeals, in Cooper v. Marek, supra, says:

"A delivery made by the depositor alone will not be sufficient to constitute a valid escrow."

The case of Davis v. Clark, supra, involved an agreement for a loan of money on a note and mortgage on real estate. The note and mortgage in pursuance of an agreement between the parties were delivered to a third party to hold in escrow until the borrowed money was actually paid or delivered for the use and benefit of the wife of the mortgagor, she having joined in both note and mortgage. The note and mortgage were duly executed and deposited according to agreement, but

before the payment of the money to the wife the mortgagor, upon whose separate property the mortgage was given, died. After his death the money was paid and the note and mortgage delivered to the mortgagee. It was contended that the death of the mortgagor revoked the authority of the holder, and that his subsequent delivery of the note and mortgage was without authority and void. The court held the contrary, and in the course of the opinion said:

"‘An escrow is an obligatory writing (usually, but not necessarily, in the form of a deed) delivered by the party executing it to a third person, to be held by him until the performance of a specified condition by the obligee, or the happening of a certain contingency, and then to be delivered by the depository to the obligee, when it becomes of full force and effect.’ 6 Am. & Eng. Ency. Law, 857. This definition, which seems to be collected out of all the authorities, applies fully to the instruments in question in this case. They were delivered by the Harshes to W. M. Clark, in pursuance of an agreement with Mr. Book, to be held by Mr. Clark until the performance of a specified condition by Mr. Book, and then to be delivered to him. Contrary to the view of the plaintiffs in error, the depository of an escrow is regarded as an agent of both obligor and obligee, and he can neither return the deed or other instrument to the former without the latter's consent, nor deliver it to the latter without the consent of the former, save upon fulfillment of the agreed conditions. Roberts v. Mullenix, 10 Kan. 22; Grove v. Jennings, 46 Kan. 366, 28 Pac. 738; Lessee of Shirley v. Ayres, 14 Ohio, 307; Cannon v. Handley, 72 Cal. 133, 13 Pac. 315. * * * According to these decisions, the depository of an escrow is not the agent of the depositor, merely, and the agreement of deposit cannot be rescinded by him alone, and the escrow withdrawn at his will."

Defendant in error contends that notwithstanding there was a valid mutual contract of deposit in pursuance of a prior verbal contract of sale, and the deed in question so deposited, it was not an escrow and remained revocable at the option of plaintiff in error in the absence of proof of an enforceable contract of sale, independent of the recitals in the deed, and independent of the mutual agreement for the holding and ultimate delivery of the same.

[5] When a sufficient memorandum of a prior oral contract has been made and signed and suit for enforcement is brought, it is the oral contract that is enforced, and not the memorandum by which such contract is proved.

[6] The authorities hold that a valid contract of sale is necessary to render the deposit of a deed in pursuance of the same a genuine escrow. 21 C. J. p. 866, § 2; 10 R. C. L. p. 622, § 3; 3 Words and Phrases, First Series, p. 2464; Fitch v. Bunch, 30 Cal. 208, 212; Miller v. Sears, 91 Cal. 282, 27 Pac. 589, 25 Am. St. Rep. 176; Stanton v. Miller,

58 N. Y. 192, 202; Holland v. McCarty, 173 Cal. 597, 160 Pac. 1069; Thomas v. Birch, 178 Cal. 483, 173 Pac. 1102; Anderson v. Messenger, 158 Fed. 252, 85 C. C. A. 468; Clark v. Campbell, 23 Utah, 569, 65 Pac. 496, 54 L. R. A. 508, 90 Am. St. Rep. 716; Kopp v. Reiter, 146 Ill. 437, 34 N. E. 942, 22 L. R. A. 273, 37 Am. St. Rep. 156.

[7] Where there is a prior verbal contract of sale and the recitals in the deed placed in escrow in themselves, or in connection with other writings submitted therewith, meet the requirements of the statute of frauds of the jurisdiction in which the suit arises, we think the better reasoning sustains the proposition that the deed so deposited is a genuine escrow, and therefore irrevocable, and that the prior verbal contract so evidenced is thereby rendered enforceable. 2 Elliott on Contracts, p. 570; 10 R. C. L. p. 629, par. 11; Griel v. Lomax, 89 Ala. 420, 6 South. 741; Johnston v. Jones, 85 Ala. 286, 4 South. 748; Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 427; Moore, Kappel & Co. v. Ward, 71 W. Va. 393, 76 S. E. 807, 43 L. R. A. (N. S.) 390, Ann. Cas. 1914C, 263; Thayer v. Luce et al., 22 Ohio St. 62; Minn. & Oregon Land & T. Co. v. Hewitt Investment Co. (D. C.) 201 Fed. 752, 759; Bronx Inv. Co. v. National Bank of Commerce, 47 Wash. 566, 92 Pac. 380; McGee v. Blankenship, 95 N. C. 563; Blacknall v. Parish, 59 N. C. 70, 78 Am. Dec. 239.

Mr. Elliott, in his work on Contracts (volume 2, p. 570), speaking of the necessity for delivery of the memorandum relied on to avoid the statutes, says:

"However, when a deed is placed in escrow beyond the control of the grantor it is sufficient as a memorandum."

The rule with reference to the sufficiency of a delivery in escrow as satisfying the statute of frauds is thus stated in 10 R. C. L. p. 629, par. 11:

"If, after an oral contract for the sale and purchase of land, the vendor makes, executes and delivers in escrow a deed for the land, reciting the consideration, and containing the terms and conditions of the sale, it has been held that this will amount to a compliance with the statute of frauds, and the contract if so alleged and proven will be enforced."

The statute of Wisconsin declares every contract for the sale of lands void unless such contract or a memorandum thereof expressing the consideration is in writing and subscribed by the person by whom the sale is made. Wis. Stat. § 2304.

The Supreme Court of that state, in discussing the sufficiency of the recitals in a deed to meet the requirements of the statute and render its deposit in pursuance of a prior verbal contract to convey a genuine escrow in Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 429, says:

"The only writing subscribed by Thomas, which relates to any such contract, is the deed he deposited with Judge Hand. That instrument expresses a consideration, and if it contained the whole contract, we should have no difficulty in holding that it answers the requirements of the statute."

The court in the same opinion discusses the case of Thayer v. Luce & Fuller, 22 Ohio St. 62, and concludes the discussion with the following reference thereto:

"We so far adopt it here as to hold that, if a person who has made a parol agreement to sell land sign an instrument in the form of a conveyance of such land, to the vendee, and deposit it in escrow, if such instrument contains the terms of the parol agreement, including the consideration, it is a sufficient compliance with the requirements of the statute of frauds."

The Court of Civil Appeals which decided this case has since adopted the view expressed by the Supreme Court when it granted this writ and applied the same in the case of Townsend v. Day, 224 S. W. 283, 286.

The Court of Civil Appeals for the Eighth District has also adopted the same view and has applied the same in the case of Pearson v. Kirkpatrick, 225 S. W. 407, 409.

Defendant in error cites, among other cases, Main v. Pratt, 276 Ill. 218, 114 N. E. 576; McLain v. Healy, 98 Wash. 489, 168 Pac. 1, L. R. A. 1918A, 1161; Seifert v. Lanz, 29 N. D. 139, 150 N. W. 568; Foulkes v. Sengstacken, 83 Or. 118, 158 Pac. 952, 163 Pac. 311, to sustain his contention that an enforceable contract must be shown independent of the recitals in the deed.

In the case of Seifert v. Lanz there was a valid written contract signed by the husband, and it was held that the wife, by joining her husband in the execution of the deed in pursuance thereof, and joining her husband in depositing the same in escrow with said contract, adopted such contract and rendered the deed so executed and deposited a binding conveyance of the homestead as to her. The recitals in the deed in the other cases were held wholly insufficient in themselves to meet the requirements of the statute of frauds, and therefore the effect of the delivery in escrow of a deed which does contain such recitals was not before the court in any of such cases.

We have failed to find any case holding the escrow revocable or the sale unenforceable where a deed containing recitals sufficient to meet the requirements of the statute of frauds was deposited under a mutual agreement between the vendor and vendee in pursuance of a prior complete verbal contract of sale.

We therefore hold that the recitals contained in the deed deposited by defendant in error with Turner, being sufficient to meet the requirements of our statute of frauds,

rendered the prior contract of sale enforceable and such deposit a genuine and irrevocable escrow.

Turner, with whom the deed was deposited, was trustee for both parties, and he was required by law to deliver the deed to plaintiff in error when he tendered compliance with the terms of the contract of deposit. 10 R. C. L. p. 633, § 15.

The trial court found that specific enforcement of the contract would be inequitable, and defendant in error contends that there is evidence in the record supporting such finding, and that therefore the judgment should be affirmed regardless of the holding of this court on the sufficiency of the recitals in the deed to avoid the statute of frauds.

The defendant in error, Green, was at the time of the transaction a young man 23 years of age. He inherited one-fourth of the tract of land in controversy, and in November, 1916, bought the remaining three-fourths from his brothers and sisters for $3,000. He owed $1,900 on the place at the time of the transaction in August, 1917, and was afraid he would have to enter military service, and he wished to settle his business before he went to the war. He had lived at home with his mother all his life, and his experience in trading was limited; but there is no intimation that he did not possess the capacity of the average man of his age and opportunity. The place was rented to tenants on the third and fourth at the time of his transaction.

Green spoke to Simpson about buying this land before he purchased the interest of the other heirs and told him if he would pay $4,000 he could have the whole place, but Simpson refused.

About August, 1917, Simpson approached Green and asked him if he still wanted to sell, but Green said he was not caring much about selling. Simpson asked him to go with him and see the place and arranged for some one to take Green's place at work, and they went together to look at the land.

Simpson offered to trade some horses and mules on the place. Green refused to consider the proposition, but told him he would take $4,300 and the automobile. Simpson laughed at him and said it was more than the place was worth.

They met again next day and traded colars, and after some dickering they agreed on $4,200 and the automobile, and Simpson gave him $50 on the trade. Green agreed to pay the taxes and pay off the incumbrance and furnish an abstract.

Two days later Green, having decided that he did not wish to carry out the trade, offered Simpson his money back and offered to pay him for his trouble in going to look at the place, but Simpson refused and said he had bought the place and was going to have it. The same day a relative of Green's offered Simpson the $50 back and $50 more on top of it to let Green keep the place, but he refused and insisted that he was going to have the place.

They finally called parties to witness that Green was to execute the deed and furnish an abstract, and Simpson was to put $2,000 in the bank, and Turner was to hold the deed and the money until the remainder of the purchase money was paid. This was done, and Green received the automobile that day.

About two weeks later, Green concluded not to carry out the trade and took the automobile back to Simpson and offered to pay back the $50 and to pay him for his trouble in going to look at the place. This offer was refused, Simpson repeating that he had bought the place and intended to have it, and Green left the automobile and deposited the $50 in the bank to Simpson's credit. The place, with the accruing rents, was sold to Simpson for $4,500; the automobile being taken at $300.

The testimony of witnesses with reference to the value of the land ranged from $25 to $40 per acre. The rents actually collected amounted to $969.14.

The rule with reference to enforcement of contracts for the sale of real estate by decree for specific performance is laid down in 25 R. C. L. p. 271, § 72, as follows:

"Specific performance is granted to a greater extent in cases of contracts respecting real property than in cases respecting personal property. While in the latter case the jurisdiction to grant it is limited to special circumstances, in the case of real estate specific performance is decreed almost as a matter of course when the contract has been properly established and is unobjectionable in any of its features which address themselves to the chancellor's discretion. Under such circumstances the vendee is entitled to have the contract specifically enforced irrespective of his right to recover damages for its breach."

The effect of inadequacy of consideration in determining whether specific performance will be decreed is stated in section 10, p. 208, of the same authority, as follows:

"It is, however, the generally accepted rule, both in England and this country at the present time, that mere inadequacy of price does not in itself constitute a sufficient reason for a court of equity to withhold specific performance of the contract."

The rule with reference to inadequacy of price is thus stated in 36 Cyc. p. 609:

"In the language of a leading case, 'unless the inadequacy of price is such as shocks the conscience, and amounts in itself to conclusive and decisive evidence of fraud in the transaction, it is not itself a sufficient ground for refusing a specific performance;' or, to state the rule more in accordance with modern conceptions of fraud, inadequacy of consideration or of the subject-matter, standing alone as a defense, must be so gross as to lead to an

inference, satisfactory to the court, of fraud or mistake in the making of the contract"—citing authorities.

The rule with reference to the effect of hardship in the contract sought to be specifically enforced is thus stated in section 22, p. 224, 25 R. C. L.:

"Although courts of equity may decline to enforce those contracts which are inequitable or unfair, it is not their province to undo a bargain merely because it is hard. The courts are not concerned with the question of the wisdom of bargains of persons competent to deal with their own affairs, and hardship will not ordinarily prevent specific performance of a contract which was fairly and justly made, when it results from miscalculation or from contingencies which might have been foreseen, and for which the complainant is not at fault"—citing authorities.

The Supreme Court of Missouri, in the case of Evans v. Evans, 196 Mo. 1, 93 S. W. 969, 975, held that the purchase of property worth $5,000, for $2,600 was not so inequitable as to prevent specific performance, notwithstanding the purchase was by an uncle and it was claimed that he knowingly misrepresented the value of the lands to his nephews to secure the trade.

[8, 9] All circumstances in evidence must be taken into consideration in determining whether specific performance in a given case would be inequitable. The situation of defendant in error in this case with reference to liability to military service at the time of the contract, his desire to have his business in shape in case he should be compelled to go to war, the incumbrance on the land for unpaid purchase money, the price he had shortly theretofore paid for the three-fourths interest in this very land, the uncertainty as to the amount likely to be realized from the yearly rents at the time of the trade, the difference of opinion among the witnesses as to the value of the land, the absence, according to his own testimony, of any undue solicitation inducing him to enter into the trade, or any element of fraud or oppression in connection therewith, in our opinion clearly refutes any contention that the enforcement of specific performance would be inequitable, and such contention of defendant in error is therefore overruled.

We recommend that the judgment of the district court and the Court of Civil Appeals be reversed and the cause remanded for further proceedings in accord with this opinion.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission on the question discussed in its opinion.