## IRA A. NYE *v.* ISAAC TAGGART.

*Trover.   Contract.   Deed.   License.   Revocation.   Statute of Frauds.*

A. proposed to B., in January, to purchase B.'s farm.   The price was then agreed upon, B. reserving possession till April 1st.   B.'s father, the defendant, held a mortgage on said farm, and it was agreed that the machine and steers in question should go to the defendant in part payment of the farm, he to take them when he pleased.   The deed was duly made and left with a third party, and never delivered to A.   In February A.'s wife died to whom the deed run, and whose money was to pay for the farm mainly, whereupon A. sent word to B. that he did not want to take the farm.   *Held,* that this was a revocation of the license to the defendant to take the machine and steers, which had remained in A.'s possession.

A. went on the farm and cut some wood, in February, by permission of the defendant, the day before his wife was taken sick, but cut none after that.   *Held,* that upon the facts this did not constitute a part execution of the contract.

THIS was an action of trespass for taking one mowing machine and a pair of two year old steers, with a count in trover for the conversion of the same.   Plea, the general issue, and trial by jury at the May Term, 1867, BARRETT, J., presiding.

The testimony in the case was as follows :

The plaintiff was called as witness and testified as follows : I made a trade with Isaac Nelson Taggart for his farm, that he was upon, for the price of $1,225.   He said there was a mortgage of $200. that must come out, leaving $1,025, $500. to be paid the first day of April, the remainder to be paid at different times.   The trade was not to be closed till April 1st.   I told him I had a mowing machine and a pair of steers to dispose of and I wanted them to go in towards the $500., and for the rest my wife would pay the money.   For what remained over the $500. my wife gave her notes.   The writings were made and put into a third person's hands to remain till April 1st.   The deed run to my wife and she signed the notes.   The price of the mowing machine was agreed upon at $75. ; we could not agree upon the price of the steers and they were to be taken April 1st at the appraisal of Bartlett Taggart ; I was to winter the steers.

The papers were made in January, 1866.   My wife died February 20th, 1866.

At some time in the winter I asked Nelson, it is my impression, if he was willing I should go upon the farm and cut some wood? I did cut some wood on the farm the 14th day of February, the day before my wife was taken sick; did not cut any after that.

Joseph Taggart, called as a witness by the plaintiff, testified as follows: I attended the funeral of the plaintiff's wife. He requested me, after the services were over, to go and tell Nelson Taggart that he did not want to take the farm, and that he would do what was right about it. The next morning I went and saw Nelson Taggart, and did the errand. He said he did not know as it would make any difference; that he did not know but he might as well stay there; that he did not know but it might discommode him as to money The reason was, that the plaintiff had lost his wife. The steers were worth in the neighborhood of $150.

Isaac N. Taggart was called as a witness for the defence, and testified, among other things, as follows:

Nye was to have the deed when the $500. came; that was to pay the note for $425., and $75. was to go on the other notes. The $75. for the machine had already been taken out of the notes. No other arrangement was made about the steers, except that I was to have them at $150., or at the appraisal of Bartlett Taggart.

And being cross-examined the witness testified as follows:

Five hundred dollars was to be paid the next week. The steers, when taken, were to apply on the other notes. They were to be applied, when taken, and we were to take them when we pleased. Nothing was said about what should be done, if the $500. was not paid. I understood that the deed was to go on record when the $500. was paid. This was talked at the office. Nye told me that he should have the money in two or three hours. I went away, expecting that the $500. would be paid that day and the deed delivered.

I lived on the farm. Father had two mortgages on it. I told Nye that father owned the biggest part of the farm; that father had paid all that had been paid; that father held the notes that had been taken up.

I think the writings were made the latter part of December— nearly five weeks before they were signed. The new trade was made

a few days before the deed was signed. A few days after I got back from Barnard I learned that Nye was disappointed about getting the money.

I understood that we could take the steers at $150. whenever we pleased, or have them appraised by Bartlett Taggart when we took them. When we first made the trade he said he wanted to keep the steers out to eat up the hay that he had; he first wanted to keep them till May, finally said to April. I think I reserved possession of the farm to April 1st, whether the deed was delivered or not. At the time of the second trade he did not say he wanted to keep the steers to eat up his hay. I have no recollection that anything was said about the keeping. I have a recollection of having conversation with William Taggart about the steers. I do not recollect that it was about his buying them. I think that conversation was before the deed was signed. He said he should think I would want to take away the steers before the first of April to break them. I told him we had no right to take them away.

It appeared in the course of the trial that the defendant took the property from the plaintiff's barn Saturday evening, after dark, ( in the plaintiff's absence,) and without the knowledge of the plaintiff, or of Jones who was staying at his house and doing his chores, during his absence at Claremont, and till Sunday, March 3d.

It also appeared that the plaintiff had no property except the mowing machine and steers, and that his wife's money was to pay for the farm.

The court having expressed an opinion, that upon the testimony, much of which is omitted in this statement, the plaintiff was, in law, entitled to recover, the defendant submitted to a direction to the jury to return a verdict for the plaintiff for the value of both the mowing machine and the steers, with leave to the defendant to except.

The court then directed the jury to return a verdict for the plaintiff for the value of the mowing machine and the steers,—to which decision and direction the defendant excepted.

*J. J. Wilson* and *Washburn & Marsh*, for the defendant.

1. The notice sent by the plaintiff to the defendant was insuffi-

cient, in its terms, to operate as a revocation of the license to the defendant to take the property in question.

2. The license to take the property was to the defendant. The notice was to the defendant's son, and not to the defendant, and, therefore, was insufficient to render the defendant a trespasser in the taking.

3. The license to the defendant was coupled with an interest, and could not be revoked.

4. The contract had been, in part, executed by the plaintiff by entering upon the land and severing wood, which thereby became his property, and the notice could not operate a rescinding of the contract, since the plaintiff did not and could not place the defendant in the same position as before. *Adm'r of Pike* v. *Morey*, 32 Vt. 37 ; *Hammond* v. *Buckmaster*, 22 Vt. 375 ; *Hawley* v. *Moody*, 24 Vt. 603.

*Hunton & Gilman*, for the plaintiff.

If everything is true which the defendant's evidence tends to show, it does not establish a defence in this suit, and there is no error in the judgment of the county court. The arrangement for the purchase of the farm was between the wife of the plaintiff and the defendant's son, Nelson. It was never completed. If the plaintiff gave leave to have the steers and mowing machine taken away, it was revoked by the decease of his wife and the notice he sent to Nelson prior to the taking. By the decease of Mrs. Nye the whole matter ended. There was no one to whom the deed could be delivered. There was no one to deliver the notes. The property was taken under a claim of right, and has been so held to this time. There was no plea of leave or license.

The opinion of the court was delivered by

PROUT, J. The county court on the trial of this cause having expressed the opinion that the plaintiff was entitled to recover, the defendant submitted to a verdict, and excepted.

It seems to be conceded that, upon the facts, the contract of purchase of the farm is invalid, for the reason that it is within the Statute of Frauds, and if so, the defendant's title to the steers and mowing machine, in controversy in this action, is also invalid, the contract being entire. But it is claimed by the defendant that this

action cannot be maintained, for the reason that the defendant took possession of the property in dispute by leave and with the assent of the plaintiff, and that, upon this point, the evidence being contradictory, it should have been submitted to the jury for them to find the fact.

Conceding that the plaintiff did assent or give the defendant liberty to take the steers and mowing machine, he could revoke it at any time before the defendant acted upon it. *Wallis* v. *Truesdell*, 6 Pick. 454. We learn from the case, and the evidence is not contradictory upon this point, that the defendant's wife died February 20th, 1866. The day after she was buried, Joseph Taggart, at the request and on behalf of the plaintiff, gave notice to Nelson Taggart, with whom the trade for the farm was negotiated, that he did not wish to do anything more about it, as his wife was dead, who, it appears, was interested in the contemplated purchase, and was to take the conveyance. This, we think, was a revocation of the license to take the property, and seems to have been so regarded by Nelson Taggart. He acquiesced, remarking, in reply, that it would make no difference; that he might as well remain on the farm, and, at that time, made no claim to the property in dispute, or intimated that he or the defendant had a right to take it. And the notice of revocation we think effectual as against the defendant. It is apparent that it came to his knowledge before he took the property, or why take it *secretly*, in the night and in the plaintiff's absence?

As to the question that the contract had been in part executed, it appears that the possession of the farm was reserved by Taggart until the first of April. The deed was never delivered, and the chopping of the wood by the plaintiff on the 14th of February cannot be referred to or connected with that contract. But, were it otherwise, and the defendant, in fact, had a debt against the plaintiff, growing out of a valid sale and conveyance of the farm, payable partly in the specific property in controversy, the plaintiff could not rightfully possess himself of it, only on a voluntary delivery of the plaintiff. Then again the purchase of the farm, as shown by the evidence detailed in the case, was for Mrs. Nye, who was to furnish the means, mainly, to pay for it. She is in no way connected with the cutting of wood—neither knew of or directed it.

The judgment is affirmed.