## PEARSON et ux. v. KIRKPATRICK.
### (No. 1093.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 11, 1920. Rehearing Denied
Dec. 2, 1920.)

**1. Frauds, statute of ⟨⟩103(1)—Lease delivered in escrow held sufficient memorandum.**

Oil and gas lease signed by lessor, reciting agreed consideration and terms and conditions of lease, delivered to bank pursuant to parol escrow agreement, *held* a sufficient memorandum to comply with statute.

**2. Escrows ⟨⟩1—Mines and minerals ⟨⟩58 —Escrow agreement held not void for lack of consideration.**

An agreement whereby lessors delivered oil and gas lease to bank under agreement that lessees have specified time in which to examine the title *held* not a mere option lacking mutuality, but an escrow agreement with an irrevocable delivery, not void for lack of consideration; the reciprocal rights and obligations of the parties furnishing a sufficient consideration.

Error from District Court, Comanche County; J. H. Arnold, Judge.

Action by A. B. Kirkpatrick against W. F. Pearson and wife. Judgment for plaintiff, and defendants bring error. Affirmed.

Carrigan, Montgomery, Britain & Morgan, and W. J. Townsend, all of Wichita Falls, and J. B. McEntire, of Dallas, for plaintiffs in error.

H. N. Goodson, of Comanche, for defendant in error.

### Findings of Fact.

HIGGINS, J. On August 30, 1918, W. F. Pearson, and wife, plaintiffs in error, signed and acknowledged a mineral lease covering 60 acres of land owned by them in Comanche county. The instrument leased the land unto Kirkpatrick, defendant in error, for five years for the purpose of mining and operating for oil and gas. It recites a cash consideration of $1,050, paid by Kirkpatrick, and contains the usual provisions for oil and gas royalties to be paid by the lessee to the lessors. It also provides for a forfeiture of the lessee's rights if a well was not commenced in a year, coupled with the usual provision allowing the lessee the privilege of deferring the commencement of a well by paying to the lessors the sum of $60 annually, or depositing such sum in bank to lessors' credit. The instrument differs in no material respect from the ordinary oil and gas lease.

W. F. Pearson and Kirkpatrick, on August 30, 1918, together went to the First National Bank of Gorman, Tex., where Kirkpatrick drew two checks in favor of Pearson, one for $100, dated August 30, 1918, the other for $950, dated September 30, 1918. These checks and the lease were delivered by the parties to the bank. The checks were to cover the cash consideration named in the lease. With reference to the conditions upon which the lease and checks were delivered to the bank, its cashier, Mr. Haley, testified:

"I am not positive as to who delivered the lease and checks to me; I think when Kirkpatrick signed the checks he pushed the two checks and lease through the window to me. After I placed the checks with the lease, I said: 'This is not an escrow matter then?' and Pearson says, 'No; this is a trade;' and I says, 'Kirkpatrick, before they were signed says, "I am buying a lease from Mr. Pearson, and I am to pay for it when I satisfy myself as to the title." ' He was to pay for it when he satisfied himself as to the title, and when Pearson furnished him with an abstract. I says, 'Well, this is not an escrow matter then,' and Pearson says, 'No; this is a trade.' They did not state to me what the trade was. I says, 'Well, if this trade does not go through, you are to get your checks back and Pearson his lease; that is, if you are not satisfied with the title,' and Kirkpatrick says, 'Yes.' I said to Kirkpatrick that if he was not satisfied with the title I was to give him his checks back and to give Pearson the lease back, and Kirkpatrick said, 'Yes,' and he said if he accepted the title the checks would go to Pearson and the lease to him. * * *

"I wrote the checks, and then passed them to Kirkpatrick, and he signed them. I am not positive as to what Kirkpatrick said after he signed those checks, but it seems to me he passed the two checks with the lease through the window to me, and said, 'Tom, I am to pay for this lease, when I satisfy myself with the title, and Pearson is to furnish an abstract, and I am to pay for it when I am satisfied with the title.' I made the remark, 'If you are not satisfied with the title, you are to get the checks back and Pearson the lease, and if you are satisfied with the title you are to get the lease and Pearson the checks,' and they said, 'Yes.' We had two windows, and I think Kirkpatrick was standing in front of the second window. I was on the inside of the bank, and Kirkpatrick was on the outside of the bank, and Pearson was right by his side. I did not hear Pearson say that Kirkpatrick only had until the 1st day of September to examine the lease and either accept it or reject it. I think I turned to the vault and put the papers in the vault. I did not hear either Mr. Pearson or Mr. Kirkpatrick say anything like Mr. Kirkpatrick was to have until September 1st to either turn the lease back or accept it. * * *

"Before I turned around to go to the vault, I made the remark, 'This is not an escrow matter,' and Pearson says, 'No; it is a trade;' and Kirkpatrick was standing there, but he did not say anything else. The statement concerning the checks were to go to Pearson and the lease to Kirkpatrick if he accepted the title was made first, and I added to that, when Pearson furnished the abstract and Kirkpatrick was satisfied with the title, I was to pay the checks to Pearson and turn the lease over to Kirkpatrick, and then I went and put the papers in the vault, and that is the last I heard of that talk."

W. F. Pearson testified:

"We agreed on the price, and Kirkpatrick said to me, 'Mr. Pearson, I have not got the money to pay you for that lease, all of it,' and we talked on, and finally he said, 'I tell you what I will do; I will take that lease and pay you $100 in cash;' and says, 'I. have some drafts that will be in in a few days, and I can pay you the balance;' and I told him I was not in a hurry for the money, and I would give him some time on it, and he. said he did not want but a week or ten days on it, and I told him that he could have thirty days on it if he wanted it. There was to be $100 paid in cash when I made the papers—that is, when I delivered him the lease—and the $950 he was to have 30 days' time on it, but he said he did not want that much time, that he would pay it earlier, and we went down to the bank, and Mr. Reed wrote up the lease for us. * * *

"We discussed the payment of the $100, and finally he agreed to this, or both of us did; he says, 'Pearson, I am going over to Mineral Wells this evening, and I will be back Sunday, and I will examine the abstract and pay you the $100 Sunday;' and we went to the window of Mr. Haley, the cashier, and Kirkpatrick said, 'Write me a check for $100 and one for $950,' and when he wrote those checks he pushed them out, and Kirk signed them and pushed them back, and I delivered Haley the lease, and Haley asked if it was an escrow agreement or trade, and one or both of us told him it was a trade. Perhaps both of us told him that, and he asked what disposition he was to make with it, and then there was some discussion as to Kirkpatrick passing the title, I do not remember all the details of it, and Haley asked if Kirkpatrick disapproved the title what should be done, and Kirkpatrick said the checks would come back to him, and the lease back to me. * * * He said, 'I will be back here Sunday and pass on the abstract and pay you the $100.' I did not agree to give him beyond Sunday, September 1, 1918, to pass on the abstract and pay me the money."

Kirkpatrick testified:

"We stepped over to the window where Mr. Haley, the cashier, was, and asked him to write a check for $100 in favor of Mr. Pearson, and he wrote it; and I said, 'Write another for $950 in favor of Mr. Pearson, but date it 30 days in advance;' and Mr. Haley turned around and looked at the calendar, and said that would be September 30th, and he wrote it, and he gave the two checks to me, and I signed them and pushed them back, and I said, 'Tom, I am buying an oil lease from Mr. Pearson, and he is going to give me an abstract, and when I have an opportunity to satisfy myself as to the title, which no doubt is good, these checks will be delivered to Mr. Pearson,' and I handed Mr. Haley the lease, and said 'Tom (meaning Mr. Haley), take care of this for a few days,' and Haley looked and said, 'This is not an escrow agreement, then;' and Mr. Pearson said, 'No; this is a trade;' and that was all that was said there in Mr. Haley's presence, and we turned around and left the window, and Mr. Pearson said, 'Now, Kirk, if you can manage to pay this off sooner I would appreciate it, but if you need the time you can have 30 days to pay for it.' The date this occurred was in the afternoon of August 30, 1918."

From the evidence it appears the parties did not regard the deposit as an escrow, but the concrete facts to which they testify show that the checks and lease were deposited in escrow with the bank.

After making the deposit Kirkpatrick left town, and was absent until Wednesday, September 4th. In the meantime Pearson instructed the bank not to deliver the lease. Upon his return Kirkpatrick waived an examination of the title, and demanded the lease, which was refused by the bank under Pearson's instructions. The only material difference between Pearson's testimony and Kirkpatrick's is with reference to the time within which Kirkpatrick was to examine and accept the title and pay the $100 represented by the check for that amount. Pearson claimed that the examination and acceptance of the title and payment was to be made not later than Sunday, September 1st, whereas, Kirkpatrick claimed that he had 30 days from August 30th. The case was tried without a jury. No findings of fact nor conclusions of law were filed by the court, and in this condition of the record it must be assumed that the trial court resolved this conflicting evidence in Kirkpatrick's favor. It also appears that up to September 4th the abstract of title had not been delivered by Pearson to Kirkpatrick. He claims that his failure to deliver same was due to Kirkpatrick's absence from the city, but in this connection it is shown by his own testimony that he was not in a position to deliver the abstract until Tuesday, September 3d. It had been sent to Eastland to be brought down to date and returned through the bank, and Pearson himself did not get it until Tuesday, September 3d.

Upon the facts stated this court therefore finds that on September 4th the time had not expired within which, under the escrow agreement, Kirkpatrick was required to approve and accept the title as shown by the abstract and pay the $100. On September 6th the bank marked "Paid" the two Kirkpatrick checks, and placed $1,050 to the credit of Pearson. Pearson declined to accept it.

This suit was brought by Kirkpatrick against the bank, Pearson and wife, and judgment was rendered in his favor for possession and delivery of the lease, and that he was the owner of the rights, benefits, and estate conferred thereby, and enjoining Pearson and wife from disposing of the interests covered by the lease.

### Opinion.

[1] Under their first assignment the plaintiffs in error contend that the judgment was unwarranted because there was no sufficient memorandum in writing of the contract, and

its enforcement, therefore, precluded under the statute of frauds. The escrow agreement was in parol, but it seems the authorities are agreed that the conditions upon which a deed has been delivered in escrow may rest in and be proved by parol evidence; that such evidence does not violate the rule of evidence prohibiting a written contract from being varied or contradicted by parol evidence. Note 18 L. R. A. (N. S.) 337.

But there is great confusion in the decisions of other states upon the question of whether or not a deed so delivered in escrow, which recites the agreed consideration and contains the terms and conditions of the sale, is a sufficient compliance with the statute of frauds. This question was presented to the Ft. Worth court in a case which in principle we cannot distinguish from the case at bar. It was there held to be insufficient. Simpson v. Green, 212 S. W. 263. A similar ruling was made by the Amarillo court in Blue v. Conner, 219 S. W. 533. But in Simpson v. Green a writ of error was granted by the Supreme Court, with a notation upon its docket relative to this question, as follows:

"We think the deed placed in escrow is a sufficient memorandum in writing, signed by the grantor to comply with the statute of frauds."

From this notation it appears, to be the present view of our Supreme Court that a deed signed by the grantor and placed in escrow under circumstances differing in no material respect from the case at bar is a sufficient memorandum in writing to comply with the statute of frauds, and we deem it our duty to follow the view of the Supreme Court thus tentatively indicated. For this reason the assignment is overruled.

[2] The next assignment proceeds upon the theory that the transaction constituted merely an option to purchase given by Pearson and wife, unsupported by any consideration, and therefore they had the right to withdraw the option at any time before acceptance by Kirkpatrick. This view is untenable. The facts show delivery of the checks and lease to the bank under an escrow agreement. The depositors retained no control over the instruments, and the delivery was irrevocable. Under the escrow agreement the depositors expressly or impliedly assumed mutual obligations. Pearson and wife agreed to furnish an abstract of title to the land, and Kirkpatrick agreed to examine and pass upon the title. The latter could not arbitrarily refuse to examine the title, nor in bad faith disapprove the same. Had he done so, the Pearsons would have had their remedy. These mutual and reciprocal rights and obligations of the parties furnished a sufficient consideration for the contract, and relieve it of the objection that it lacked mutuality.

Affirmed.