## DOMINION OIL CO. v. POU. (No. 2148.)

(Court of Civil Appeals of Texas. Amarillo. May 30, 1923. Rehearing Denied June 20, 1923.)

**1. Frauds, statute of ⬅129(3)—Contract to assign lease held executory.**

Where the agent of assignor executed a transfer of a lease, and gave it to a bank to attach to a draft, but did not intend to deliver the assignment except on payment of the consideration, on refusal of the payee to pay the draft, the contract to assign the lease was executory; the mere execution of the assignment not constituting part performance.

**2. Frauds, statute of ⬅129(3)—Delivery of deed to vendee's agent without paying price held insufficient to take case out of statute.**

Where a vendor has no intention to part with title until he receives the purchase price, the delivery of a deed to the vendee's agent without payment of the price is insufficient to take the transaction out of the statute of frauds.

**3. Frauds, statute of ⬅115(4)—Executory contract of transfer of oil lease not enforceable if not signed by "party to be charged."**

Where a transfer of an oil lease named the transferee, but was not signed by it, and the draft to which the lease was attached was drawn on the transferee's agent, but was not signed, paid, or accepted by the agent or the transferee, the executory agreement to transfer the lease was not enforceable against the transferee under the statute of frauds, not being signed, as required by Rev. St. art. 3965, by the "party to be charged," which means the party against whom the contract is sought to be enforced.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Signed by the Parties to be Charged.]

**4. Frauds, statute of ⬅115(4)—Deed signed by vendor and placed in escrow can be enforced against him.**

A deed signed by a vendor and placed in escrow can be enforced against him, being signed by the party to be charged.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Bills and notes ⊜⇒59—Party not liable on draft not signed by it.**

Under Negotiable Instruments Act, § 18 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001a—18), providing that no person is liable on an instrument whose signature does not appear thereon, which is also true of non-negotiable instruments, where a grantor's agent executed a transfer of an oil lease and left it with a bank, to be delivered on payment of an attached draft, and neither the transfer nor the draft was signed by the transferee, but the draft was signed by its agent, if the transaction is viewed as an assignment of the lease in exchange for the draft signed by the agent of the transferee, liability of the transferee could not be based thereon.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by Jas. H. Pou, Jr., against the Dominion Oil Company. From judgment for plaintiff, defendant appeals. Reversed and rendered.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellant.

Weeks, Morrow & Francis, of Wichita Falls, for appellee.

KLETT, J. The plaintiff, Jas. H. Pou, Jr., obtained a judgment for $6,500 against the defendant Dominion Oil Company upon the allegations:

That "C. N. Haskell was a duly authorized agent and representative of the defendant Dominion Oil Company, and duly authorized and empowered to purchase property upon its account and to bind said Dominion Oil Company to pay therefor, and duly authorized to appoint subagents and representatives, and to delegate to them such authority as he might see fit, and said C. N. Haskell was and is in complete charge and control of the affairs of said Dominion Oil Company; that on or about the date above mentioned the said C. N. Haskell, acting for and on behalf of the defendant Dominion Oil Company, purchased from plaintiff, through one C. A. Owens, who was the duly authorized representative of the said C. N. Haskell and the said Dominion Oil Company, an oil and gas lease upon the following described lands situated in the county of Reeves, state of Texas, to wit: Tracts Nos. 33, 40, 41, and 48 of a subdivision of the west 320 acres of section No. 18, block No. 2, H. & G. N. Ry. Company survey—for an agreed consideration of $6,750, which was to be paid by a draft drawn upon the said C. N. Haskell, at New York, and the said C. A. Owens was expressly authorized and instructed to draw said draft and consummate said purchase, and in accordance with said instructions he duly caused the abstract of title to said property to be examined, and, upon same being approved, consummated said purchase and sale by drawing the draft above described upon the said C. N. Haskell, in favor of the said plaintiff, for the sum of $6,750, to which was attached an assignment of said oil and gas lease to defendant Dominion Oil Company, and said draft was duly

delivered to plaintiff; that the defendant C. N. Haskell and Dominion Oil Company failed and refused to pay said draft, and by reason thereof became liable and bound to pay plaintiff, jointly and severally, the amount of same; that plaintiff is now, and has been at all times, ready, willing, and able to transfer and assign said property upon payment of said draft to the defendants, or either of them, or to whomsoever they may direct."

The defendant denied under oath that the alleged contract and draft, or either of them, was executed by it under its authority, and specially set up the statute of frauds. A jury being waived, the trial court filed findings of fact and conclusions of law reading as follows:

"*Findings of Fact.*

"First. I find as a fact that in December, 1919, the Dominion Oil Company, an unincorporated joint-stock association, was organized and its articles of association filed for record in the Deed Records of Wichita County, Tex., in volume 141, p. 340, and subsequently said articles of association were amended by the stockholders of the Dominion Oil Company, and that said amended articles of association were duly recorded in volume 140, p. 389, of the Deed Records of Wichita County, Tex., and that one of the purposes and objects of said company was the purchase of oil and gas leases.

"Second. I find as a fact that under said articles of association the trustees of said company had the power and authority to delegate the powers vested in them by said articles of association.

"Third. I find as a fact that said company was organized, promoted, and financed by C. N. Haskell, of New York City, N. Y., and that from the outset the policies and the business of said company were dictated and controlled by C. N. Haskell, who passed upon and approved or rejected all purchases of property made by the said Dominion Oil Company; that the manner and way in which said company usually and customarily made purchases of oil and gas leases was through C. N. Haskell, who was by said company held out to the public in general, as the agent of said company for passing upon and determining whether or not the particular purchases of oil and gas leases should be made for said company.

"Fourth. I find as a fact that prior to April of 1920 the said C. N. Haskell had consummated for said Dominion Oil Company the purchase of the Bradley properties and various and sundry other properties acquired by the Dominion Oil Company in the course of its business conducted under the articles of association above mentioned, and that such was done with the knowledge, approval, and acquiescence of the acting trustees of said company.

"Fifth. I find as a fact that prior to April 12, 1920, Jas. H. Pou, Jr., the plaintiff in this case, acquired an oil and gas lease located in Reeves county, Tex., and described as follows, to wit: Tracts Nos. 33, 40, 41, and 48 of subdivision of the west 320 acres of section No. 18, block No. 2, H. & G. N. Ry. Co. survey,

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Reeves county, Tex., each block containing five acres.

"Sixth. I find as a fact that on and prior to said date the said Dominion Oil Company kept and maintained an office in Pecos, Tex., and that C. A. Owens, a trustee of the Dominion Oil Company and the vice president thereof, was in charge of said office; that the said C. A. Owens represented the said Dominion Oil Company at said place as manager of its business in and around Pecos, Tex., where the Dominion Oil Company was purchasing oil and gas leases, subject in each instance to the approval of C. N. Haskell, as aforesaid.

"Seventh. I find as a fact that on or about April 12, 1920, E. A. Kegley was the duly authorized agent and representative of Jas. H. Pou, Jr., for the purpose of selling the oil and gas lease owned in Reeves county, Tex., by Jas. H. Pou, Jr., and that he had full power and authority to sell, transfer, and assign said lease.

"Eighth. I find as a fact that the said C. A. Owens, with the approval of C. N. Haskell, and upon specific instructions from the said C. N. Haskell, acting for the Dominion Oil Company, purchased for the Dominion Oil Company from Jas. H. Pou, Jr., acting through E. A. Kegley, said oil and gas lease above described for a consideration of $6,750, of which amount $250 was paid by the said C. A. Owens for the Dominion Oil Company, leaving a balance due on the purchase price of said lease of $6,500.

"Ninth. I find as a fact that a written transfer and assignment of said lease was made to the Dominion Oil Company by Jas. H. Pou, Jr., acting through his attorney in fact, Eugene Kegley, and that said written assignment was accepted for the Dominion Oil Company by C. A. Owens with the approval of C. N. Haskell.

"Tenth. I find as a fact that said written assignment was attached to a draft signed by C. A. Owens, who was at said time the duly authorized agent of the Dominion Oil Company, drawn upon C. N. Haskell, of New York City, said draft being payable to the order of Jas. H. Pou, Jr., in the amount of $6,750, but that prior thereto the said C. A. Owens, acting for the Dominion Oil Company, had the title to said lease examined, was satisfied therewith, and accepted for the Dominion Oil Company the assignment thereof, and that such was done with full authority from C. N. Haskell, acting for the Dominion Oil Company.

"Eleventh. I find as a fact that the assignment above mentioned with draft attached was sent through the mails to the said C. N. Haskell, and that he refused to honor for payment said draft, although having previously agreed so to do.

"Twelfth. I find as a fact that the Dominion Oil Company, acting through its agent aforesaid, accepted said lease assignment, and are the owners of said lease and all rights thereunder, but that there is a balance due on the purchase price of $6,500, and that demand for payment has been made and refused.

"Thirteenth. I find as a fact that said oil and gas lease purchased by the Dominion Oil Company in the manner aforesaid from Jas. H. Pou, Jr., by draft drawn on C. N. Haskell, was purchased in the usual and customary manner and way in which the Dominion Oil Company ac- quired its oil and gas leases in the ordinary conduct of its business.

"Fourteenth. I find as a fact that from the original organization of the Dominion Oil Company down to and subsequent to the time of the transaction in question that Sherry O'Brien was one of the trustees of the Dominion Oil Company, and was in active charge of the business of the company in Wichita county, Tex., and was the general manager of the company's business at said place at said time, and that likewise C. A. Owens was one of the trustees of the company during said time, and was in charge of the company's business in and around Reeves county, Tex., at which place he was buying oil and gas lease for the Dominion Oil Company, subject to approval and authorization of C. N. Haskell.

"Conclusions of Law.

"First. I conclude as a matter of law that the Dominion Oil Company, having purchased from Jas. H. Pou, Jr., the oil and gas lease in question in the usual and customary manner and way in which the company made purchases of oil and gas leases, and having accepted the lease in question and paid $250 on the purchase price thereof, is bound in law for the remainder of the purchase price in the sum of $6,500 for which amount judgment is accordingly rendered, in favor of the plaintiff, Jas. H. Pou, Jr., against the defendant Dominion Oil Company."

The sufficiency of the evidence to sustain the trial court's findings of the delivery and acceptance of the assignment being challenged by appellant, it becomes necessary to review the evidence offered by the plaintiff to prove the sale. Plaintiff relies upon the testimony of E. A. Kegly, who related the transaction as follows:

"Mr. Owens came to my office and introduced himself as Mr. Owens, vice president of the Dominion Oil Company, and he asked me who owned a certain lease. I said Mr. Pou owned it, but I was representing him. He wanted to know what the price was, and finally I said if he would pay $6,750 for the 20 acres, $6,500 to Mr. Pou and $250 to me, he could have it. * * * I asked him who he was buying it for, and he said the Dominion Oil Company, and that he was vice president of the company. I asked him would he have the cash, and he said he would have just as good as cash. He said he would send the assignment with a draft to Gov. Haskell in New York, and that the money of the Dominion Oil Company was kept in New York. He told me Mr. Haskell passed finally on all purchases. I asked him if he had any authority for this, and he said none except that he had been delegated to buy and had been buying down there. I told him I would not deliver him the leases or make any deal until he received absolute authority from Gov. Haskell to make the deal. At my request he wired Gov. Haskell, asking permission to buy. Gov. Haskell wired back to him giving permission to buy the lease, and telling him to go ahead and buy it, and that he would honor the draft. That was the sum and substance of it, and Mr. Owens brought the telegram to me before I would make the deal. I made an assignment and de-

livered it to Mr. Owens. That is the copy of the assignment, and I signed it as attorney in fact. Mr. Owens, in the meantime, I had given him the abstract which he had examined by an attorney there—I think Judge Hubbard—and the records were not as they should be, and we gave him the best abstract we could, and Judge Hubbard and Mr. Owens got together to trace the title to this, and finally accepted the title, and, after accepting the title to this lease, then he wrote the draft and signed it himself, and attached it to this assignment and gave it to the bank, the Pecos Valley State Bank, to be sent to Mr. Haskell. Mr. Owens gave it to the bank, and I took it to the bank. I don't remember which one of us handed it to them. I told Mr. Owens I didn't want this to go through unless I was positive it was a sale. He said it was an absolute sale, but he could not pay the money except in New York, and that it must go through that way, and that every purchase or lease the Dominion Oil Company made in that vicinity had been made by drawing drafts on Gov. Haskell in New York. * * * That is the second draft Mr. Owens drew on C. N. Haskell. The first draft was done in the same way as the second one in favor of J. H. Pou, Jr., on Gov. Haskell, and was taken to the bank and was refused, and when it came back it was destroyed. Naturally we couldn't have two drafts. He kept and gave a new one. Mr. Owens retained the first draft. The second draft drawn and was attached to the assignment of the lease, which is Exhibit B. At the time the second draft had gone in Mr. Owens made me a cash payment. He at that time said he wanted the second draft to go through direct; the other had gone through the banks, and that he would guarantee it would be paid, and after it had gone he paid me $250. * * * I would say it was between 10 days and 2 weeks between the drawing of the first draft and the drawing of the second draft—whatever time it took to go to New York and come back; it was approximately 2 weeks. I was there in person when the first draft was drawn. Mr. Owens drew it himself before me. I was in his office. He went with me to the bank. He had the lease in his hand, or I had it in mine, when we went to the bank. I had given it to him, and it was given to the bank. He asked me to go with him to the bank. I gave Mr. Owens the assignment. I didn't give it to the bank. It might have been handed by Mr. Owens to me to hand to the bank. I gave it to Owens, so that he could attach it to the draft. He asked me to go with him to the bank. I went with him to see that he attached the assignment to the draft. I saw him deliver it to the bank. It was delivered by the two of us. Which one of us handed it to them I don't know, but Mr. Owens invited me down there. The draft was made out to Pou. I didn't tell the bank that Owens could get the lease without paying the money. I wanted the money for that lease. I wasn't going to part with it until I got the money. He said there was no money in Pecos, and it would have to go that way. I wouldn't have parted with the lease without the money, if I had got nine-tenths of it."

[1, 2] We think the statement of the grantor's agent that he "wouldn't have parted with the lease without the money" shows that there was no intention to deliver except upon payment of the consideration. It is held that, where the vendor had no intention to part with the title until he received the purchase price, the delivery of the deed to vendee's agent, without payment of the price, is insufficient to take the case out of the statute of frauds. Commins v. Perry, 44 Misc. Rep. 458, 90 N. Y. Supp. 92; Nye v. Taggart, 40 Vt. 295; Dyer v. Graves, 37 Vt. 369. In the absence of delivery and acceptance, the mere execution of an assignment does not constitute part performance. Hence the contract must be regarded as wholly executory.

[3] Having concluded that the agreement is an executory one, the question presented is whether or not the placing of an executed transfer in the bank at Pecos for delivery to C. N. Haskell in New York upon the payment of the attached draft is a sufficient memorandum of agreement under the statute of frauds. The transfer named the Dominion Oil Company as transferee, but it was not signed by the company. The draft was signed by C. A. Owens and drawn on C. N. Haskell, but it was not signed, paid, or accepted by Haskell or the company. We think the executory agreement is not enforceable against the company under the statute of frauds for the reason that such agreement is not "signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized," as required by article 3965 of the Statutes. Moore v. Powell, 6 Tex. Civ. App. 43, 25 S. W. 472; Morris v. Gaines, 82 Tex. 255, 17 S. W. 538; Clegg v. Brannan, 111 Tex. 367, 234 S. W. 1076; Zanderson v. Sullivan, 91 Tex. 499, 44 S. W. 484.

[4] A deed signed by the vendor and placed in escrow is sufficient as a delivered memorandum of the agreement to be binding on the vendor when the vendee is seeking specific performance because such memorandum is "signed by the parties to be charged therewith" (Simpson v. Green [Tex. Com. App.] 231 S. W. 375; Day v. Townsend [Tex. Com. App.] 238 S. W. 213; Pearson v. Kirkpatrick [Tex. Civ. App.] 225 S. W. 407 [writ refused]; Bott v. Wright, 62 Tex Civ. App. 632, 132 S. W. 961; 27 C. J. 301, § 385); but we find no decisions outside of Kentucky and Tennessee, holding that the vendor in an executory contract may maintain an action against the vendee who has not subscribed. The cases are practically unanimous in adhering to the view that the "party to be charged" is the party against whom the contract is sought to be enforced. Harper v Goldschmidt, 156 Cal. 245, 104 Pac. 451, 28 L. R. A. (N. S.) 699, and notes, 134 Am. St. Rep. 124; 25 R. C. L. 669, § 305.

In Moore v. Powell, supra, the court quoted from Morris v. Gaines, 82 Tex. 255, 17 S. W.

538, wherein Judge Gaines of the Supreme Court of Texas said:

"The doctrine is that, when a contract is executory on both sides, and there has been no part performance, if the vendee seeks specific performance, he must show a memorandum of the sale, signed by the vendor; and, if the vendor seeks to enforce the payment of the purchase money, he must prove a promise in writing signed by the vendee. * * * The part performance, to take a case out of the operation of the statute must be by the party who seeks to enforce the contract."

The foregoing statement of the law appears to be in accord with the decisions generally. In 25 R. C. L. 669, § 305, the law is thus stated:

"Where the statute requires a contract or memorandum to be signed by the party to be charged, it is essential, according to the general view, that it be signed by the party against whom it is sought to be enforced, who is to be deemed the party to be charged. Thus, according to the great weight of authority, the fact that the memorandum, in case of a contract for either goods or land, is signed by the seller or vendor, who is the party seeking to enforce the agreement, is insufficient; it must also be signed by the buyer or vendee against whom it is sought to be enforced. The same is true where the memorandum is signed by the vendee or buyer only, and he seeks to enforce the contract against the vendor or seller. Accordingly, as a general rule, a verbal acceptance by the parties sought to be charged, of a written offer by the other party is insufficient, and so is a written acceptance of an oral offer. If the vendee has not signed the contract the fact that he has paid a part of the purchase money will not enable the vendor to enforce it against him."

It is made plain by the Supreme Court of our state that it is not a question of whether or not under the common law there can be a valid written contract when signed by one party and verbally accepted by the other, but purely a matter of following the plain provisions of the statute of frauds, which requires, as Judge Pierson points out, "that contracts for sale of real estate not only must be in writing, but they must also be signed by the party to be charged therewith." Clegg v. Brannan, 111 Tex. 372, 234 S. W. 1076.

[5] If the transaction is to be viewed as an executed agreement wherein the plaintiff delivered an assignment to the Dominion Oil Company in exchange for a draft on the alleged agent C. N. Haskell, we think that, under the Negotiable Instruments Act, the Dominion Oil Company could not be held liable on the draft, for the reason that under the act mentioned "no person is liable on the instrument whose signature does not appear thereon." Vernon's Ann. Civ. St. Supp. 1922, art. 6001a—18; 8 C. J. 106, § 195. The same is true of nonnegotiable instruments signed by the agent of a disclosed principal. Sanger v. Warren, 91 Tex. 472, 44 S. W. 477, 66 Am. St. Rep. 913; Heffron v. Pollard, 73 Tex. 99, 11 S. W. 166, 15 Am. St. Rep. 764.

We are led by the foregoing conclusions to reverse and render the judgment of the trial court.