**POU v. DOMINION OIL CO.** (No. 590–4058.)*

(Commission of Appeals of Texas, Section A. Nov. 12, 1924.)

1. **Deeds ⚖➟56(2)—Question of delivery is one of intent on the part of grantor.**

Question of delivery is one of intent on part of grantor.

2. **Mines and minerals ⚖➟74—Evidence held to show delivery and acceptance of assignment of oil and gas lease.**

Evidence *held* sufficient to show delivery and acceptance of assignment of oil and gas lease.

3. **Frauds, statute of ⚖➟139(1)—Statute without application to executed contract.**

Statute of frauds is without application to executed contract.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by James H. Pou, Jr., against the Dominion Oil Company. Judgment for plaintiff was reversed by the Court of Civil Appeals (253 S. W. 317), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and judgment of the trial court affirmed.

Weeks, Morrow & Francis, of Wichita Falls, for plaintiff in error.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for defendant in error.

GERMAN, P. J. James H. Pou, Jr., sued the Dominion Oil Company for $6,500 balance due upon the purchase price of an oil and gas lease covering lands in Reeves county, Tex. He obtained judgment in the dis-

---

⚖➟For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied December 20, 1924.

trict court of Wichita county for that amount. We refer to the parties as in the trial court.

The basis of plaintiff's suit was as follows: That on April 12, 1920, acting by his agent, C. E. Kegley, he executed and delivered to C. A. Owens, vice president and agent of the Dominion Oil Company, an assignment of the oil and gas lease, for an agreed consideration of $6,750, which assignment was accepted by the said Owens, and the transaction between them became an executed contract; that of the consideration Owens paid $250, leaving a balance of $6,-500. He claimed that one C. N. Haskell was the duly authorized agent and representative of the Dominion Oil Company, having full authority to purchase for said company the oil and gas lease in question, and to authorize Owens to act for the company in its purchase; and that Owens so acted.

The trial court made extensive findings of fact, which included a finding that C. N. Haskell of New York dictated and had full control of the policies and business of the Dominion Oil Company, and had authority to purchase oil and gas leases and appoint subagents for that purpose. There was also a finding that Haskell authorized and empowered Owens to make the contract in this instance, and to consummate the purchase of the lease without the personal approval of Haskell. There are numerous assignments of error as to the admission of evidence with reference to the agency of Owens, and it is contended that the evidence does not support the finding that Haskell was authorized to represent the defendant company, as he did in this instance. We have carefully considered these assignments, and it is our opinion that there is ample evidence to support the finding that Haskell controlled the affairs of the Dominion Oil Company and was authorized by it to purchase the lease. This is true, even if it be conceded that some of the testimony complained of was inadmissible. It is undisputed that Haskell, by telegram, authorized and instructed Owens to make the purchase in this instance, and to close up the contract therefor.

There is just one question of importance in this case. It is this: Is there any substantial evidence in the case to sustain the finding that the transaction between Pou and Owens was a completed one, and that the contract of assignment was executed? If there is evidence to establish a delivery and acceptance of the assignment, the judgment of the trial court should be affirmed. Briefly, the material facts can be thus stated:

Owens approached Kegley, the agent of Pou, with the purpose of obtaining an assignment of the lease. The lands covered by the lease were in close proximity to a well being drilled, and which, it was expected, would be developed as a paying proposition or otherwise within a few days. The par-

ties agreed upon a consideration of $6,750. Owens stated to Kegley that it would be necessary for the transaction to be approved by Haskell at New York before the trade could be finally consummated. Kegley declined to sell, unless the transaction could be closed immediately. Thereupon Owens wired Haskell at New York and received a telegram from him, which was shown to Kegley, authorizing him to close the transaction and to pay the consideration by drawing a draft on him (Haskell) at New York. Owens had an attorney to examine the title, which was approved, and Kegley, for Pou, executed and acknowledged an assignment of the lease. This assignment was delivered by Kegley to Owens, and Owens drew draft in favor of Pou on C. N. Haskell for $6,750, with notation thereon, "Papers attached," and the draft was given by Owens to Kegley. At the suggestion of Owens, the parties then went to the bank at Pecos, Tex., the draft was indorsed by Kegley for Pou, and the draft and assignment were pinned together and handed to the officer of the bank. The evidence is not certain as to who handed the papers to the bank, and there is nothing to show what instructions were given. The draft was later returned to the bank unpaid. Owens drew a second draft, and it was later returned unpaid. Kegley was paid $250 in cash by Owens at the time the second draft was made. Owens and Kegley both testified that they considered the transaction a closed one, and as an absolute sale. In the negotiations, Kegley stated to Owens that he would not sell the lease, except for the cash, and Owens assured Kegley that the draft would be the same as the cash. Kegley testified that he considered it the same as the cash, in view of Haskell's telegram stating that he would pay the same. Owens further assured Kegley that every purchase of leases made in that vicinity by the Dominion Oil Company was handled in the same way and payments made by drawing drafts on Governor Haskell in New York City. The trial court found that the purchase of the lease in this instance was in the usual and customary manner and way in which the Dominion Oil Company acquired its oil and gas leases in the ordinary conduct of its business.

The Court of Civil Appeals reversed and rendered judgment in favor of the defendant (253 S. W. 317), holding that the evidence showed as a matter of law that there was no delivery of the assignment. This holding is based upon the following statement, taken from the testimony of Kegley on cross-examination:

"I didn't tell the bank that Owens could get the lease without paying the money. I wanted the money for that lease. I wasn't going to part with it until I got the money. He said there was no money in Pecos, and it would have to go that way. I wouldn't have parted with

the lease without the money; if I had got ⁹/₁₀ of it."

[1, 2] This statement must be interpreted in the light of all the other testimony of Kegley, and when this is done we do not think it contradicts his statement that he thought the transaction was a closed one, and does not conclusively show that there was no delivery of the assignment. He had testified that the instrument had already been delivered to Owens. He also had testified that Owens took the assignment to the bank, and he went along at Owens' request. We think it is to be clearly implied from the expression, "I wouldn't have parted with the lease without the money," that he considered that he had parted with the same, and that he would not have done so, except that he thought he was getting just the same as the money. He and Owens both treated the draft the same as cash. We think the evidence and all the circumstances authorize the conclusion that Kegley delivered possession of the assignment to Owens, intending that the same should then become effective as a conveyance, and accepted the draft as payment of the purchase money. The delivery of the draft, properly indorsed, to the bank, with the assignment attached, without instructions, strongly indicates that the draft was thus being forwarded for collection as an ordinary check would be, and that Owens attached the assignment as a means of notifying Haskell of the transaction for which the draft was drawn. The sale did not depend upon anything to be done by Haskell, or that required his approval. He had already approved the purchase and authorized Owens to close it. It is clearly inferable that the only purpose in sending the papers to him was that the draft might be paid, and that he would have information showing for what it was drawn. The question of delivery of a deed is one of intention on the part of the grantor, to be determined as a question of fact from all the facts and circumstances, and we think there was sufficient evidence to authorize the finding by the trial court that there was a delivery and acceptance of the assignment of the lease. Henry et al. v. Phillips, 105 Tex. 459, 151 S. W. 533; Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 5 A. L. R. 1660; Empire Gas & Fuel Co. v. Allen (C. C. A.) 294 F. 617.

[3] As the contract was an executed one, the statute of frauds had no application.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.