## BARTON v. RICHARDSON.
### No. 4155.

Court of Civil Appeals of Texas. Texarkana. March 17, 1932.

Rehearing Denied March 24, 1932.

Pollard, Beauchamp, Lawrence & Lux and J. M. Davenport, all of Tyler, for appellant.

W. H. Sanford, of Longview, and Ramey, Calhoun, Marsh & Higgins, of Tyler, for appellee.

SELLERS, J.

This suit was instituted in the district court of Gregg county by A. H. Richardson, the appellee herein, against J. W. Barton, A. A. Lockhart, Cohesia Lockhart, Lovie Lockhart, Lon Lockhart, Ruth Lockhart, and Frank Lockhart, upon a petition asserting a cause of action in trespass to try title and for specific performance. The defendants answered by general demurrer, certain special exceptions, statute of frauds, plea of not guilty, and general denial.

The title to the property involved a one-fourth interest in the royalty in the mineral rights in 54 acres of the Margaret Tennison survey and a one-eighth interest in the royalty in 127¾ acres, a part of the John Blair and Allen Norris surveys, all of said property being located in Gregg county, Tex.

The case was tried to a jury, and at the close of the evidence both plaintiff and defendants requested peremptory instructions in their favor. The court, after consideration, granted the motion of the plaintiff, Richardson, and instructed the jury to return a verdict in his favor. In keeping with the verdict, the court rendered judgment for the plaintiff for the title and possession of the property involved. From this judgment, the defendant J. W. Barton has duly prosecuted this appeal.

As viewed by this court, from the undisputed facts taken in connection with the evidence of the appellant, the trial court did not err in refusing the defendants' requested peremptory instruction and in granting the plaintiff's requested instruction, and the judgment must be sustained.

The appellee, Richardson, being desirous of purchasing the property here involved, sent his duly authorized agent, S. G. Ward, to Kilgore, Tex., on March 7, 1931, for the purpose of purchasing said property. The defendants Lockhart owned the fee-simple title to the property at this time, and had given the appellant, Barton, an option to purchase the same for a consideration of $3,500. Ward arrived in Kilgore, and approached the appellant to buy this property, and an agreement was reached whereby Ward was to pay appellant the sum of $3,750 for it. Barton instructed Ward that it would take a few days to secure the names of all the vendors to the conveyance and for Ward to check the title while this was being done. The royalty deeds were duly executed by the Lockharts, but the name of the grantee in the deeds was left blank, and on March 10th appellant accepted the deeds from the Lockharts and paid them the $3,500 in cash. On the next day, March 11th, Ward again saw appellant and negotiations between them on that day, as reflected by the evidence of Barton, is as follows: "I asked Mr. Ward how he would trade for it. I had the deeds. I had already paid for it. That he had accepted title and I wanted the money. He said Mr. Richardson is so-and-so, one of the biggest men in the country. He had written a draft on him to be collected through the Citizens National Bank of Tyler. Finally, after some hesitation, I told him I would take the draft he started to write out. He said, 'All right.' I told Mr. Ward I had heard—that I understood a sight draft to give him three days time and I would not accept a sight draft. A demand draft was drawn by S. G. Ward on Mr. Richardson in my favor. I took the draft and the contract and mineral deeds and deposited them in the Kilgore National Bank to be forwarded to the Citizens National Bank of Tyler. The two mineral deeds accompanied the draft to Tyler and were to be delivered to Mr. Richardson on payment of the draft at Tyler."

The above negotiations took place in the Kilgore Bank, and Ward made copies of the mineral deeds there in the bank which he kept. The copies were made after the appellant had inserted the name of Mr. Richardson as grantee in the deeds. The draft with the original deeds attached was then turned over to the Kilgore bank by the appellant in the presence of Ward. At this time there was a well being drilled in close proximity to this land which was nearing completion. It was admitted that, should this well come in a producer, the value of the royalty being conveyed would be greatly enhanced, but, should it prove to be a dry hole, the value of the property would probably be reduced. On March 12th this well reached the oil sand, and on March 13th the appellant caused the Kilgore bank to send the following telegram to the Tyler bank: "If our collection 949 was not paid at the close of business 12th do not accept payment today return advise by wire."

The draft did not reach Tyler until some time on the 13th. Richardson had been to the bank on the 12th and on the 13th, and instructed the officer of the bank with whom he transacted business that he expected these

papers and wanted to take them up, but at both times Richardson was informed that the draft had not arrived. On the morning of the 14th, just before noon, Richardson went to the bank, and was advised by the officer with whom he transacted his business that the draft was there. According to Richardson's testimony, Richardson instructed the officer of the bank to charge the draft to his account, which the officer agreed to do. This officer, who was the vice president, testified that Richardson told him he wanted to pay the draft, that, if he (Richardson) did not get back by the time the bank closed, to charge it to his account, and that he assured Richardson that this would be done.

On the morning of the 14th the appellant caused the Kilgore bank to send a messenger to the Tyler bank for the draft and papers. This messenger arrived at Tyler about noon, while the officer with whom Richardson had been transacting his business was out to lunch, and the other officers of the bank, knowing nothing of the instructions given by Richardson, delivered the draft with the deeds attached to the messenger who at once turned them over to the appellant. Richardson had sufficient funds in the bank at the time to pay the draft, and it was his custom to have drafts charged to his account rather than give checks against his account for them.

The appellant took the grantors in the deeds before a notary public, and had the name of Richardson erased and his name substituted as grantee, and then had the two deeds recorded. The $3,750 for which the draft was drawn was tendered into court by the appellee.

We are of the opinion that the facts in this case, under the authorities of this state, are sufficient to constitute a legal delivery by the appellant and an acceptance by the appellee of the deeds to the property involved, binding alike upon both parties when the draft with the royalty deeds attached was delivered to the bank at Kilgore, and that the conduct of the parties thereafter with reference to the documents themselves was unimportant as far as affecting the legal title to the property was concerned.

In the very able opinion by Chief Justice Phillips in the case of Taylor v. Sanford, 108 Tex. 340, 193 S. W. 661, 662, 5 A. L. R. 1660, our Supreme Court has very definitely announced the rule to be followed in determining what will constitute the delivery of a deed. It is there said: "The law prescribes no form of words or action to constitute the delivery of a deed. It will not divest a grantor of his title by declaring his deed effective when his purpose was to withhold it from the grantee. Neither will it deprive the grantee of his rights where it was the grantor's intention to invest him with the title, though there be no manual delivery of the instrument. The question in all such cases is that of the grantor's intention. If the instrument be so disposed of by him, whatever his action, as to clearly evince an intention on his part that it shall have effect as a conveyance, it is a sufficient delivery. 2 Jones, Law of Real Property, § 1220; 1 Devlin on Deeds, § 269."

When the above rule is applied to the facts of this case, we are of the opinion that there is no escape from the conclusion that the trade was in all legal respects completed there in the Kilgore bank when the draft with the deeds attached was delivered to the bank. The draft drawn by Ward, the agent, upon his principal, Richardson, and accepted by appellant, was in legal effect a promissory note, and, if payment of the draft by Richardson had been refused, collection of the same could have been enforced by the appellant. Julian Petroleum Corp. et al. v. Egger (Tex. Civ. App.) 15 S.W.(2d) 36. This being true, it must be said that the appellee received the consideration for which the draft was given which was the title to the property involved.

We think the conclusions reached find support in the case of Pou v. Dominion Oil Co., 265 S. W. 886, wherein the Commission of Appeals, on facts in all material respects the same as in this case, reached the same conclusions.

The disposition made in this case makes discussion of other assignments unnecessary.

The judgment of the trial court is affirmed.