## STEINBERGER PETROLEUM CORPO-RATION et al. v. WHITLEY.

### No. 3118.

Court of Civil Appeals of Texas. Beaumont.

May 6, 1937.

Rehearing Denied May 12, 1937.

Markham & Fischer, of Houston, for appellants.

Hightower & Daniel, of Liberty, for appellee.

WALKER, Chief Justice.

On the 22d day of January, 1934, appellee, L. O. Whitley, and his wife executed to J. P. Peterson a mineral lease on a certain tract of 250 acres of land owned by them in the Hugh B. Means league in Liberty county; one condition of the lease read as follows: "If operations for drilling are not commenced on said land on or before one year from this date this lease shall then terminate as to both parties unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in Farmers State Bank at Cleveland, * * * the sum of One dollar per acre Dollars." Though Peterson was named in the lease as lessee, in negotiating for the lease, he represented himself as the agent of Steinberger Petroleum Corporation, a partnership doing business in Houston, Tex., composed of Clint B. Steinberger, his wife, Callie B. Steinberger, C. C. Steinberger, Jr., Clark R. Steinberger, Chester Steinberger, and C. W. Wheeler. As agent for Steinberger Petroleum Corporation, Peterson promised, bound, and obligated his principals to pay appellee for the lease the sum of $3,750, to be paid by a draft drawn by him on his principals for that sum, the draft with lease attached to be deposited by appellee in his bank at Cleveland, Tex., to be forwarded by his bank to Houston for collection. On the day appellee executed the lease, Peterson drew the draft as per his agreement and delivered it to appellee, who attached it to the mineral lease and deposited it in his bank with instructions to forward the draft with lease attached to Houston for collection, and when the draft was paid, to deliver the lease to Steinberger Petroleum Corporation as per his agreement with Peterson. The draft, with lease attached, was duly presented to Steinberger Petroleum Corporation for collection. After several days' delay conceded to Steinberger Petroleum Corporation by appellee at their request, payment was refused, and the draft and lease were returned to appellee. No part of the consideration was ever paid. Steinberger Petroleum Corporation notified appellee in writing that it repudiated the transaction made for them by Peterson, and that they would not pay the draft or any part of the consideration for the lease.

By his first amended original petition filed in district court of Liberty county on the 8th day of February, 1936, appellee named as defendants Steinberger Petroleum Corporation, a corporation, the individual members of the partnership of Steinberger Petroleum Corporation as named above, and J. P. Peterson. By this petition, appellee pleaded generally the facts detailed above and prayed for judgment against the defendants for $3,750, the amount of the draft and the consideration for the lease. He pleaded further that on or about the 22d day of January, 1934, the defendants named above as constituting the partnership, Steinberger Petroleum Corporation, were doing business as such, buying and selling mineral leases; that these defendants "had grouped themselves together * * * for the purpose of organizing the corporation," and, pending the organization of the corporation, did business as partners "until the incorporation of said organization was actually completed by the filing of the charter with the Secretary of State on March 30, 1934." He pleaded further that, after the organization of the corporation, it took over the assets and liabilities of the pre-existing partnership. The defendants answered by general and special demurrers, by plea of the marital status of Callie B. Steinberger,

by plea of the statute of frauds (Vernon's Ann.Civ.St. art. 3995), by sworn denial of the partnership, and by special plea denying the agency of Peterson. The following issues were submitted to the jury, answered as indicated:

"Special Issue No. 1: Do you find from a preponderance of the evidence that Clint C. Steinberger, Callie B. Steinberger, C. C. Steinberger, Jr., Clark R. Steinberger, Chester Steinberger and C. W. Wheeler were acting jointly for their mutual profit as an unincorporated association in the business of buying and selling oil properties under the name of Steinberger Petroleum Corporation on January 22, 1934?

"Answer 'Yes' or 'No,' as you find the facts to be."

The jury answered: "Yes."

"Special Issue No. 2: Do you find from a preponderance of the evidence that J. P. Peterson was authorized by C. C. Steinberger to buy the mineral lease in question for the association of persons, if any, operating under the name of Steinberger Petroleum Corporation, if any?

"Answer 'Yes' or 'No,' as you find the facts to be."

The jury answered "Yes."

The verdict was returned into court and filed on the 1st day of July, 1936. On the 24th day of July, 1936, on the verdict of the jury, the court entered judgment in appellee's favor against all the defendants except Callie B. Steinberger for the sum of $3,750, with interest at the rate of 6 per cent. per annum from the 5th day of February, 1934. All the judgment defendants except Peterson have duly prosecuted their appeal to this court.

### Opinion.

■ Appellants have briefed exceptions to the court's charge not reserved in the lower court; these exceptions are overruled.

■ Under all the evidence, the defendants sued as partners were in fact partners on the 22d day of January, 1934, doing business as partners under the firm name of Steinberger Petroleum Corporation. There was testimony to the effect that, in certain transactions, members of the partnership bought leases for themselves as individuals and not as partners, but such testimony had no relation to the facts of this case. Peterson testified that he was the agent for all the defendants, that is, for the partnership, Steinberger Petroleum Corporation, and that he bought the lease from appellee for the partnership; appellants' testimony denied this agency; there was no testimony that the lease was bought for any particular member of the partnership. The evidence satisfactorily supports the answers of the jury to the two questions submitted by the court's charge.

■ The partnership and its constituent members were not named as lessees, but only Peterson was named as lessee; there is no merit in the contention that on this statement, the partnership and its members were not liable for the contract price of the lease. On that point, the Commission of Appeals said in Diacomis v. Wright, 34 S.W.(2d) 806, 807: "It appears from such allegations and their intendments, that J. S. Wright was authorized to execute the instrument in his own name, for G. G. Wright. There can be no doubt that if, upon the trial of the case, these allegations be proved by competent evidence, a contract binding G. G. Wright would be shown. For a contract which is shown by competent evidence to have been made by a principal through an agent, and in the latter's name, binds the principal. Garcia v. Yzaguirre (Tex.Com.App.) 213 S. W. 236; Texas Land & Cattle Co. v. Carroll & Iler, 63 Tex. 48; Traynham v. Jackson, 15 Tex. 170, 65 Am.Dec. 152."

■ We also overrule the contention that the contract made for the partnership and its constituent members by their agent Peterson was in violation of the statute of frauds. Under the evidence and the verdict of the jury, Peterson was authorized by the partnership to draw the draft as it was drawn and to deliver it to appellee in payment of the lease. The draft was a sufficient memorandum to take the transaction out of the statute of frauds. Julian Petroleum Corporation v. Egger (Tex.Civ.App.) 15 S.W.(2d) 36; Barton v. Richardson (Tex.Civ.App.) 47 S.W.(2d) 430; Day v. Townsend (Tex.Com.App.) 238 S.W. 213; Simpson v. Green (Tex.Com.App.) 231 S.W. 375; Pou v. Dominion Oil Co. (Tex.Com.App.) 265 S.W. 886.

■■ We overrule the contention that it was necessary for appellee to plead and and prove a tender of the lease to appellants; and the further contention that the fact that appellee had the lease in his possession when the case was tried defeated

his cause of action. By the very terms of the lease, the $3,750 was in payment of only the first year of its term; by its express terms, the lease terminated at the end of the first year on the failure of appellants to pay the lease rental due at that time. Appellants' rights as lessees had long terminated before the filing of the first amended original petition, and they had received all the benefits granted by the lease—these rights had been tendered to them and they had refused to accept them by breaching their contract.

We overrule the contention that appellee recovered on the wrong measure of damages; appellants contend that the proper measure of damage was the difference between the contract price of the lease and its value when they breached the contract by refusing to accept it. Appellants also contend that appellee failed to establish a measure of damage, in that there was no evidence that the lease was not worth as much before the contract was breached as on the day it was breached. When appellants breached their contract by refusing to pay the draft and accept the lease, appellee had a cause of action for the full amount of the contract price. The rule on this point was stated as follows by the court in Phillips v. The Maccabees (Tex.Civ.App.) 50 S.W.(2d) 478, 479: "As we understand the rule, where a vendee breaches a contract for the sale of land, the vendor may treat the contract as breached and sue for the damages, or he may affirm the contract and sue for the purchase price. If the vendor elects to affirm the contract, he is entitled to recover the agreed purchase price of the land. * * * Young v. Dalton, 83 Tex. 497 [498], 18 S.W. 819; Empire Gas & Fuel Co. v. Pendar (Tex.Civ.App.) 244 S. W. 184, par. 2; Smith v. Chipley (Tex. Civ.App.) 14 S.W.(2d) 116, par. 3; Gambrell v. Tatum (Tex.Civ.App.) 228 S. W. 287; Hooser v. Forbes (Tex.Civ. App.) 33 S.W.(2d) 550; Parr v. McGown (Tex.Civ.App.) 98 S.W. 950." See, also, Texas Pacific Coal Co. v. Barker, 117 Tex. 418, 6 S.W.(2d) 1031, 60 A. L.R. 936. In this case appellee pleaded and proved the execution of the lease by him, the agreement of appellants' agent to pay him for the lease the sum of $3,750, his tender of the lease on the very terms agreed upon by him and the agent, the refusal of appellants to pay the contract price and accept the lease, their repudiation of the lease; and his affirmance of the contract. These facts brought his cause of action squarely within the rule announced by the Phillips Case and the authorities cited therein.

Appellants' last contention is that, on the undisputed facts, the corporate defendant was not liable. This contention is denied. The charter of the corporate defendant was not issued until the 20th day of March, 1934, after the execution of the lease, its tender to the partnership, and and its repudiation by the partnership. But, before the execution of the lease, the members of the partnership, as stated above, had agreed to form the corporation and, pending the issuance of the charter, conducted business as partners under the corporate name. Before the execution of the lease, all the capital stock of the corporation had been subscribed and paid in and was used by the partnership in conducting the partnership business; officers had been elected, and every detail of the corporate organization had been concluded except filing the charter. When the charter was issued, the incorporators were members of the partnership; they paid no new stock subscriptions, but the stock was paid for in full by the assignment to the corporation of the partnership assets. Not only did the corporation take over the partnership assets, but it also assumed, by express contract, the partnership liabilities. On that issue the president of the corporation testified, and there was no evidence to the contrary:

"Q. Did all the assets and liabilities of the group held in the name of Steinberger Petroleum Corporation before actual incorporation go into the corporation when it was incorporated? A. Either at that time or later, all of it did.

"Q. The actual chartered company assumed the assets and liabilities of the group upon incorporation, is that true? A. That is true, unless there were leases where one of the group had no interest and in that event it was generally held in the name of one of the individuals."

On the facts stated above, the corporate defendant was also liable on the following proposition of law announced by the court in Morrison v. Sewell (Tex.Civ. App.) 4 S.W.(2d) 1029: "Where owner of business transferred assets to corporation in which he owned capital stock, corporation is presumed to have assumed debts of business and is prima facie liable therefor." See, also, 8 Thompson on Corpora-

tion, p. 121; Stephenson v. Calliham (Tex. Civ.App.) 60 S.W.(2d) 805; Modern Dairy, etc., Co. v. Blanke, etc., Co. (Tex. Civ.App.) 116 S.W. 153; Meadows v. Mitchell (Tex.Civ.App.) 39 S.W.(2d) 106.

The judgment of the lower court is in all things affirmed.