Joe T. HUDGINS, Appellant,

v.

Alphonse KRAWETZ et al., Appellees.

No. 15810.

Court of Civil Appeals of Texas, San Antonio.

Nov. 16, 1977.

W. James Kronzer, Kronzer, Abraham & Watkins, Houston, Thomas F. Webb, Webb, Stokes & Sparks, San Angelo, Rey Perez, Crystal City, for appellant.

Robert Lee Bobbitt, Brite, Drought, Bobbitt & Halter, Richard J. Karam, Nicholas & Barrera, Inc., San Antonio, W. E. Casey, Carrizo Springs, for appellees.

CADENA, Chief Justice.

Plaintiff, Joe T. Hudgins, appeals from an order of the district court of Zavala County sustaining the pleas of privilege of defendants, Alphonse Krawetz and wife, Jeune Krawetz, Elizabeth Krawetz Lang and husband, Carl D. Lang, and Al Perkins, and transferring plaintiff's suit to Bexar County, the domiciliary county of all defendants.

Plaintiff contends that the suit is maintainable in Zavala County under the provisions of Subdivision 14 of Article 1995, Tex. Rev.Civ.Stat.Ann. (1964), which requires that suits "for the recovery of lands . ., or to quiet the title to land" be brought in the county in which the land is located. Since it is undisputed in this case that the land involved in this litigation is situated in Zavala County, it is only necessary to determine whether the suit is one for the recovery of land or to quiet title to land, and this determination is to be made solely from the facts alleged in the plaintiff's petition, the rights asserted, and the relief sought. *Scott v. Whittaker Pipeline Constructors, Inc.,* 517 S.W.2d 406 (Tex.Civ. App.—Austin 1974, no writ).

Plaintiff's pleadings may be summarized as follows:

1. Gulf Energy and Development Company, identified in the remainder of this opinion as "Gulf," employed plaintiff for the purpose of obtaining title to the minerals underlying the Krawetz Ranch in Zavala County. The fee simple title to the ranch was in Mrs. Lang, subject to a vendor's lien held by her parents, Mr. and Mrs. Krawetz. In this opinion, the term "lessor" will be used to designate Mr. and Mrs. Krawetz and Mrs. Lang, while the term "lienholder" will be used to designate Mr. and Mrs. Krawetz.

2. Following negotiations resulting in an oral agreement, plaintiff prepared an oil and gas lease and an instrument subordinating the vendor's lease to the interest of the lessee. These instruments, accompanied by a draft on the Broadway National Bank of San Antonio (herein identified as "Broadway") in the sum of $56,295.00, representing the bonus payment, were delivered by plaintiff to lessor on September 17, 1975, after Gulf had secured an agreement by Broadway to honor the draft.

3. After Mrs. Lang had been informed by Broadway that the draft would be paid, the executed instruments were, in keeping with the agreement of the parties, delivered by lessor to Frost National Bank of San Antonio (hereinafter designated as "Frost") with instructions that they be transmitted to Broadway for processing according to the terms of the draft. The draft recited that, subject to approval of lease form and title, it was payable within 22 days after receipt of the instruments by Broadway "and within 22 days after receipt of complete abstracts of title supplemented to date and received by Joe T. Hudgins, whichever be the latter."

4. On September 22, 1975, Gulf deposited $100,000.00 with Broadway on which plain-

tiff was authorized to draw drafts. Broadway received the lease, subordination agreement, and draft on September 23 or 24, 1975.

5. On September 24, 1975, lessor agreed to convey the minerals beneath the surface of the Krawetz Ranch to defendants, Carl Lang and Al Perkins, and instructed Frost to retrieve the instruments which had been transmitted to Broadway. The following day, in response to Frost's request, Broadway returned the instruments to Frost and Frost delivered them to lessor. On September 27, 1975, lessor executed an oil and gas lease in which Carl Lang and Perkins were named as lessees. Carl Lang and Perkins had notice of the prior dealings between lessor and plaintiff and of the prior delivery of the lease, subordination agreement, and draft to Frost and to Broadway.

Plaintiff's pleading also contained a count in trespass to try title, worded in the statutory form.

After alleging that he had acquired Gulf's interest, plaintiff sought judgment (1) awarding him title to, and possession of, the minerals; (2) declaring the vendor's lien subordinate to his interest as lessee; and (3) removing the cloud cast on his title by the September 27 lease to Carl Lang and Al Perkins.

The parties agree that plaintiff's suit may be classified as a suit for the recovery of land or to remove cloud from title in order to be maintainable in Zavala County under Subdivision 14, only if the facts alleged show that plaintiff held either legal or equitable title to the mineral estate.

Whether the facts alleged in the petition effected a transfer of some species of title depends on whether such facts constitute a delivery of the lease and subordination agreement.

In *Barton v. Richardson*, 47 S.W.2d 430 (Tex.Civ.App.—Texarkana 1932, writ ref'd), the grantor, after executing the deeds, accepted a demand draft and delivered the deeds and draft to his bank with instructions to deliver the instruments to the bank in Tyler, through which the draft was to be collected, and with whom grantee had made arrangements for payment of the draft. Grantee had been to the bank on March 12 and 13, but was informed that the instruments had not arrived.

Meanwhile, on March 13 grantee advised his bank to instruct the Tyler bank to return the instruments. The instruments arrived at the Tyler bank on the morning of March 14, and grantee instructed an officer of the bank to pay the draft and charge it to grantee's account. At about noon of the 14th, while the officer with whom grantee had made arrangements for payment of the draft was out to lunch, a messenger from grantor's bank arrived at the Tyler bank and another officer, knowing nothing of the arrangements which had been made by grantee, returned the instruments, which were eventually delivered to grantor by his bank.

The Texarkana Court held that the transaction was completed and title passed to the grantee when the deeds, with the draft attached, were delivered by grantor to his bank, saying that the draft accepted by grantor was, in legal effect, a promissory note, payment of which could have been enforced by grantor.

The *Barton* holding was based on the decision in *Pou v. Dominion Oil Co.*, 265 S.W. 886 (Tex.Com.App.1924). However, in both *Barton* and *Pou* the facts showed that after delivery of the deeds and draft nothing remained to be done, or approved, by the grantee. The draft was to be honored and paid immediately upon receipt of the deeds and draft by the grantee's bank.

Neither *Barton* nor *Pou* is controlling here, since in this case payment of the draft was not to take place until the title was approved by grantee. Neither of those two cases compels the conclusion that in this case the transaction was completed upon delivery of the instruments to Frost Bank so that, at that moment, legal title passed to plaintiff.

■ However, the facts alleged in plaintiff's petition establish all of the elements necessary to constitute what is usually

called a delivery in escrow or an escrow transaction. There was a delivery of the instrument of conveyance, without reservation of power to recall, to a third person (not merely as agent or custodian for lessor), with the intention that it be delivered to the lessee on the happening of a condition not specified in the instrument of conveyance. It is true that plaintiff's pleadings do not embody the term "escrow," but the legal consequences of facts do not depend on the descriptive terms used. *See* 1A Corbin, Contracts § 247 (1963).

■ Where a deed has been delivered as an escrow, a second delivery by the depositary to the grantee in the future is generally, if not always, contemplated, and in the usual case the second delivery is, in fact, made, although the rule is that a second delivery is not, in fact, required. 22 Tex. Jur.2d Escrow § 12 (1961).

The function of the escrow transaction is to give security to both parties to an existing transaction. The grantor desires to retain at least some property interest to be assured of performance by the grantee. The grantee desires security that if he performs or the condition occurs, the property will be his. The courts have recognized the escrow transaction as a means of subserving these desired functions. The result of judicial recognition of the escrow device is that the deposit of the instrument with the escrow agent creates new legal relations between grantor and grantee. Clearly, the grantee obtains an interest or right as the result of the initial deposit, it being clear that upon performance of the condition the courts will give immediate and full effect to the instrument of conveyance. The interest of the grantee prior to the fulfillment of the condition is, of course, something less than that complete ownership which is sometimes called "full title," and it would seem clear that his interest is something less than "legal title."

In Texas, this interest of the grantee named in a deed deposited in escrow has been held to be "equitable title." In *Cowden v. Broderick & Calvert*, 131 Tex. 434, 114 S.W.2d 1166, 1169 (1938), the Court said: "While legal title did not pass to the lessee until the conditions of the escrow agreement were satisfied, the lessee had, from the time the lease was placed in escrow . . . an equitable title to the leasehold estate or interest." In *Neal v. Pickett*, 280 S.W. 748, 750 (Tex.Com.App. 1926), it was said that an escrow has some effect from the beginning and originally vests equitable title in the grantee.

■ The parties here agree that the escrow agreement may rest in parol. See *Johnson v. Freytag*, 338 S.W.2d 257 (Tex. Civ.App.—Beaumont 1960, writ ref'd n.r.e.). In the case before us the lease recites that it was executed on September 17, 1975. The term of the lease is stated to be "five years from this date." Lessee is required to commence drilling operations "on or before one year from this date." Clearly, it was the intention of the parties that, upon performance of the conditions, the lease should take effect from the date of the delivery to the bank. See *Cowden, supra*, 114 S.W.2d at 1169.

It may be true, as defendant points out, that the cases holding that delivery of a deed in escrow vests equitable title in the grantee from the date of such delivery are not venue cases. But the holdings that, from the date of the initial delivery, grantee has equitable title are clear and unequivocal, and it cannot be said that whether equitable title passes is dependent on whether or not a defendant files a plea of privilege. If, as the parties agree, equitable title is sufficient to support a plaintiff's action in trespass to try title or to remove cloud, the facts alleged in plaintiff's petition are sufficient to entitle him to maintain such actions and the suit is one for the recovery of land and to remove cloud. The rule is that the nature of the suit is to be determined by the plaintiff's pleadings. The pleas of privilege filed by defendants cannot be considered as part of plaintiff's pleadings and can have no effect in the process of determining the nature of plaintiff's suit.

Since plaintiff's pleading alleges facts which entitle him to recover the land and to

have the cloud removed from his title, and since the relief sought by plaintiff is recovery of title to and possession of the mineral estate and removal of such cloud, it is clear that venue of the suit is controlled by Subdivision 14 and is properly maintainable in Zavala County.

The judgment of the trial court sustaining the pleas of privilege of defendants is reversed and judgment is here rendered overruling such pleas of privilege.